PUBLIC SERVICE ELECTRIC AND GAS COMPANY, WILLIAM
T. READ, T. GORDON COULTER, THOMAS B. LEE AND
THE WOOD MANUFACTURING COMPANY, PROSECU-
TORS, v. CITY OF CAMDEN AND CHARLES F. WISE
ET AL., DEFENDANTS.

Argued May 9, 1935—Decided September 21, 1935.

Before Justices PARKER, CASE and BODINE.

For the prosecutors, *William H. Speer, Boyle & Archer,
Charles S. Straw* and *Rudolph S. Ayers.*

For the city of Camden and Charles F. Wise, *Edwin G. C.
Bleakly* and *Lewis Liberman.*

For the other defendants, *Thomas B. Hall* and *Grover C.
Richman.*

PER CURIAM.

The writ reviews a resolution of the board of commissioners
of the city of Camden dated September 28th, 1933, and action
thereafter taken. Prior thereto, a petition had been presented
purporting to be signed by fourteen thousand three hundred
and fifty-eight legal voters of the city of Camden requesting
a referendum on the question of whether the municipality
should construct and operate a plant for the manufacture of
electricity for supplying light, heat and power for its own
purposes and for the purpose of selling and supplying the
same to its inhabitants. The action under review was taken

pursuant to article 33 of chapter 152 of *Pamph. L.* 1917, *p.* 442. *Cum. Supp. Comp. Stat.* 1911, *p.* 2314, § *136-3303. Section 3 of this article provides that if a petition signed by at least twenty per cent. of the legal voters of the municipality shall be presented to the governing body requesting a referendum vote, the governing body shall pass a resolution to the effect that a vote is required upon the question of acquiring a light, heat and power plant, as stated in the petition, and the proper municipal officer shall in the manner provided by law place the question upon the ballots used in the next general election. The question to be presented shall be in substantially the following form: "Shall the * * * of * * * (name the municipality) acquire or construct a plant or works for supplying * * * (here specify whether light, heat or power, or two or all of them * * * for the public or private uses of this municipality and its inhabitants?" "Yes," "No."

Section 4 of article 33 (*Cum. Supp. Comp. Stat.* 1911, *p.* 2315, § *136-3304), authorizes the municipality in operating the plant to do certain specified acts.

It seems that the referendum is limited to the acquisition or construction of plants for the supplying of light, heat or power for the public or private use of the municipality and its inhabitants.

The question was submitted to the voters on November 7th, and the proposal, as submitted, was adopted by a large majority of the votes cast.

The resolution passed by the board of commissioners authorizing the election recited that the petition bore the requisite number of signatures of the legal voters. Unless the petition was signed by at least twenty per cent. of the legal voters of the municipality no action should have been taken thereon.

Paragraph 37, section 1 of the General Election law (*Pamph. L.* 1930, *ch.* 187, *p.* 671; *Cum. Supp. Comp. Stat.* 1925, *p.* 502, § 65-401A), provides as follows: "Every person possessing the qualifications required by the nineteenth amendment to the constitution of the United States and article II, section 1 of the constitution of the State of New

Jersey and having none of the disqualifications mentioned therein, and being duly registered as required by this act, shall be entitled to vote in the polling place assigned to the election district in which he actually resides, and not elsewhere; provided, however, that a person, who will have, on the day of general election, the qualifications to entitle him to vote shall have the right to be registered for and vote at the primary election and register for and vote at the general election, the same as though all qualifications were met before registration for the primary election."

It, therefore, would seem that a legal voter was one possessed of the constitutional requirements but also duly registered. Obviously, no vote can be cast without registration. The city of Camden is within the operation of the permanent registration system. Paragraph 379, section 1 of the Election law, *supra,* as amended by chapter 174, *Pamph. L.* 1933, *p.* 373 (*N. J. Stat. Annual* 1933, § 65-2801A), provides that: "In every municipality of this State having a population exceeding fifteen thousand, as ascertained by the Federal census of the year one thousand nine hundred and twenty, no person shall be permitted to vote at any election unless such person shall have been registered as hereinafter provided, * * * ." Paragraph 383, section 5 (*Pamph. L.* 1930), provides that: "Each person, who at the time when he applies for registration resides in the district in which he expects to vote, who will be of the age of twenty-one years or more at the next ensuing general election, who is a citizen of the United States, and who, if he continues to reside in the district until the general election, will at the time have fulfilled all the requirements as to length of residence to qualify him as a legal voter, shall, unless otherwise disqualified, be entitled to be registered in such district; and when once registered shall not be required to register again in such district as long as he resides therein, except when required to do so by the said commissioner, because of the loss of or some defect in his registration record. Said registrant when registered as provided in this act shall be elegible to vote at any election subsequent to such registration subject to any change in his qualifications which may later disqualify him; provided,

however, that if said registrant does not vote at a general election four consecutive years, his original and duplicate permanent registration and record of voting forms shall be removed to the inactive file and he shall be required to reregister before being allowed to vote at any subsequent election."

We, therefore, conclude that the total number of legal voters in the city of Camden on the day the petition was presented were those constitutionally qualified whose names appeared upon the active registration list of the city. The petition, to have validity, must have been signed by twenty per cent. of such voters. The number of names on such list was fifty-six thousand and thirty-three. Twenty per cent. of this number would be eleven thousand two hundred and five. The number of legal voters was estimated by the city clerk at fifty-three thousand. Twenty per cent. of this number would be ten thousand six hundred.

It appears from the proof that the petition was not signed by the requisite number of voters. It clearly appears that five hundred and forty-seven persons whose names appeared upon the petition did not sign the same. The names of seventy-eight were affixed by others; one hundred and fifty-one were non-residents. There were eight hundred and fifteen duplications. It was established that two thousand four hundred and seventy-five were not registered and that one hundred and sixty-seven were not eligible for one reason or another. Three had died before the filing of the petition; one had moved away and there were two hundred and seventy-six signatures improper for other reasons. It undoubtedly appears from the record that more rather than less of the purporting signatures were invalid, and that if we should adopt, as a fact, the testimony of the city clerk that there were fifty-three thousand legal voters in the city of Camden the petition still lacked the signature of twenty per cent. of the legal voters. There cannot be a legal voter who is not a registered voter.

A supplemental petition purporting to contain the names of seven hundred and twenty-four additional legal voters, if duly filed, fails to raise the legal quota, because a large num-

ber of these signatures were improper. Scarcely two hundred were valid.

It is unnecessary to consider the question of the invalidity of the proposals because of lack of definite plan or the manner of submission to the voters.

It is perhaps significant that the petition, as presented to the city commissioners, contained no limitation as to cost. The proposal submitted to the voters limited the total expenditures to $10,000,000. The approximation and limitation of cost may have been a material variance from the petition as presented.

The city argues that the adoption of the proposal at the general election cures all defects in the preliminary proceeding. Its reliance is placed upon chapter 4, *Pamph. L.* 1907, *p.* 14. 1 *Comp. Stat., p.* 941, § 1279. This statute is entitled "An act to validate and confirm any election heretofore or hereafter held in any city for the acceptance of any act authorized to be submitted at such election, as well as any election held for the adoption of a proposition under any such act, and to validate and confirm all bonds, contracts or other obligations issued, authorized or made under any such act or pursuant to any such proposition."

Suffice it to say that no bonds, contracts or other obligations had been issued. The legislative purpose obviously does not apply to a situation like the present where the challenge is to the validity of a proposal and plan before any contracts or obligations have been issued. There is nothing in the record to indicate that the prosecutor has been in laches.

It is unnecessary now to consider the other questions raised. The proceedings under review will be set aside.