50 N.J. Super. 116 (1958)
141 A.2d 76
J. BERNARD JOHNSON, APPELLANT,
v.
H.S. REICHENSTEIN, CLERK OF THE CITY OF NEWARK, NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued and Decided April 21, 1958.
Opinion filed April 24, 1958.
*117 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. J. Bernard Johnson argued the cause pro se.
Mr. Joseph A. Ward argued the cause for respondent.
*118 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff instituted an action in lieu of prerogative writ, on which an order to show cause issued, to compel defendant city clerk to accept his petition of nomination for the office of councilman-at-large for the City of Newark in the municipal election to be held May 13, 1958. On the return day the Law Division judge, after hearing the testimony presented by defendant (plaintiff offered none), the exhibits, briefs and oral argument, discharged the order to show cause and dismissed the complaint.
Plaintiff filed his petition with the city clerk's office on March 29, 1958, the deadline date. It contained 1,758 certificates, purporting to be signed by "legally qualified voters" of the municipality, as provided by N.J.S.A. 40:69A-153, the minimum number required admittedly being 1,647. The city clerk checked the certificates against the registration records in the custody of the Superintendent of Elections of Essex County to determine their sufficiency. On April 1, 1958 plaintiff received a registered letter from defendant's office informing him that the petition had been checked against those records and rejected for insufficient signatures.
The 1,758 certificates making up plaintiff's nominating petition were checked in two batches, resulting in the rejection of 538 for the following reasons: 479 signers were not on the registration lists; 22 signatures were not the same as on the lists; 26 names were printed and so could not be checked against signatures; and 11 were duplications. The 538 rejections left plaintiff with a petition containing only 1,220 certificates, or 427 less than the required minimum of 1,647.
At the hearing on the return of the order to show cause, defendant testified that on April 1, the day plaintiff received the registered letter, he appeared at the city clerk's office to examine his petition. Defendant made the facilities of his private office available to plaintiff and gave him all of the certificates of nomination for examination. These contained notations of the reasons for rejection. None of this *119 testimony was controverted, nor was the testimony of defendant and the chief clerk in the office of the superintendent of elections under whose direction plaintiff's petition was checked, as to the accuracy of that check.
The drawing for positions of the ballot was held April 3, the day plaintiff obtained his order to show cause, returnable April 12. The hearing was held and the order under appeal entered on April 14. The appeal has been processed with dispatch because of the impending election and the necessity for prompt printing of the ballots.
The main question is whether, as defendant contends and the Law Division judge held, the signers of the nominating certificates must be registered voters. N.J.S.A. 40:69A-153, part of the Optional Municipal Charter Law, L. 1950, c. 210, as amended, N.J.S.A. 40:69A-1 et seq., provides:
"At least 45 days prior to a regular municipal election, * * * the names of candidates for all offices shall be filed with the municipal clerk in the manner and form and under the conditions hereinafter set forth:
(a) The petition of nomination shall consist of individual certificates, equal in number to at least 1%, but in no event less than 10, of the legally qualified voters of the municipality or the ward, as the case may be, and shall read substantially as follows:
`I, the undersigned, a qualified elector of the municipality of ____ residing at ____ certify that I do hereby join in a petition of the nomination of ____ whose residence is at ____ for the office of mayor (or councilman-at-large, or ward councilman of the ____ ward, as the case may be) to be voted for at the election to be held in such municipality, on the ____ 19__ * * *.'
(b) Each petition signature shall be on a separate sheet of paper and shall bear the name and address of the petitioner * * *." (Italics ours)
N.J.S.A. 40:69A-154 requires the municipal clerk, upon a petition of nomination being presented to him for filing, forthwith to examine it and ascertain whether it conforms to the provisions of the act and, if not, "he shall designate the defect and return the petition to the person making the oath."
*120 The present inquiry is the first construction of the quoted statutory provision. Other jurisdictions have dealt with somewhat similar questions, but in the particular statutory contexts involved. See Annotation, 100 A.L.R. 1308 (1936). However, our decision must rest on the specific language of our own statutes, particularly the Optional Municipal Charter Law (N.J.S.A. 40:69A-1 et seq., popularly known as the Faulkner Act) and in a more general way, the provisions of the General Election Law pertaining to nominating petitions (R.S. 19:13-1 et seq.) and permanent registration (R.S. 19:31-1 et seq.).
The Faulkner Act makes reference to various types of petitions: whether a charter commission shall be elected, N.J.S.A. 40:69A-1; nomination of candidates for the charter commission, N.J.S.A. 40:69A-3; adoption of an optional plan by petition and referendum, N.J.S.A. 40:69A-19; abandonment of an optional plan and reversion to a prior form by petition and referendum, N.J.S.A. 40:69A-25; initiative and referendum, N.J.S.A. 40:69A-184, 185. Cf. provision for recall of an incumbent, N.J.S.A. 40:69A-169. In all these provisions the statutory language is that the petition be signed by a designated percentage of the "registered voters" of the municipality. Under the Faulkner Act the requisite number of petitioners is determined by the number of registered voters, except for the exception made in N.J.S.A. 40:69A-184, 185 in the case of counties over 800,000 population, where the reference is to the number of votes cast in the last preceding election for members of the General Assembly, and the disputed provision of N.J.S.A. 40:69A-153 which refers to "legally qualified voters."
The General Election Law, N.J.S.A. 19:13-5, dealing with direct nominations by petition, requires that the nominating petition be signed by "legally qualified voters" equal in number to at least 2% of the entire vote cast for members of the General Assembly in the last preceding general election, a fixed number of signers being required for certain offices. And see R.S. 19:13-7, requiring that *121 before any nominating petition can be filed at least five of the signers make oath that, among other things, they "verily believe that the signers are duly qualified voters."
The pattern that emerges from the statutes is that the number of signers required is readily ascertainable by reference either to registration totals or votes cast in a prior election. Were we to interpret "legally qualified voters" in N.J.S.A. 40:69A-153 to mean qualified in the constitutional sense (1947 Const., Art. II, par. 3) but not necessarily registered, it would become impossible to determine the number of petitioners required. The draftsman of this provision of the Faulkner Act probably took the words "legally qualified voters" out of the General Election Law, N.J.S.A. 19:13-5, without realizing that the language of the latter section gave an express method of determining the necessary number of petitions by reference to the preceding general election. The phrase "legally qualified voters" in N.J.S.A. 40:69A-153 must therefore refer to registered voters; any other construction would render the section impossible of being implemented.
This conclusion is buttressed by the fact that in a few instances the term "legally qualified voters" or "qualified voters" is used in the Faulkner Act when "registered voters" is obviously intended. E.g., N.J.S.A. 40:69A-2, which provides that a charter commission shall be elected by the "qualified voters"; N.J.S.A. 40:69A-3(a), requiring that each nominating petition shall set forth the name, residence and address of the candidate and that the petitioners are "legally qualified to vote" for him; N.J.S.A. 40:69A-18, stating that the "legally qualified voters" of a municipality may adopt any of the optional plans; and N.J.S.A. 40:69A-22, declaring that the proposed charter or charter amendment shall take effect whenever a majority of the "legally qualified voters" of the municipality vote in favor of the change. We recognize, of course, that except for the second of these sections, the reference is to actual voting, but the use of the quoted language is not without *122 significance in reaching an understanding of the language in N.J.S.A. 40:69A-153 under consideration.
The conclusion is inescapable that the draftsman of the Faulkner Act used "legally qualified voters" or similar terms interchangeably with "registered voters" throughout the act.
At the oral argument plaintiff admitted, in effect, that "legally qualified voters," as used in the statutory section under consideration, meant, for purposes of fixing the number of signers required by application of 1% thereto, voters registered to vote in the city. This is evidenced by his concession that he was required to procure 1,647 signers. But he argues that such signers need only be "qualified electors," relying upon the language of the form of certificate set forth in N.J.S.A. 40:69A-153, and he contends that "qualified electors" means citizens constitutionally eligible to register to vote, not necessarily persons already so registered. We cannot agree. The two phrases "legally qualified voters" and "qualified elector" are obviously employed by the Legislature in pari materia and must be deemed to have been regarded as having the same meaning, no rational basis for a contrary construction being advanced by plaintiff.
Administratively, this is a desirable result, since it would be extremely impractical to verify nominating petitions if the signers needed only to be qualified to register to vote.
We conclude, therefore, that the words "legally qualified voters," as used in the Faulkner Act, N.J.S.A. 40:69A-153, means registered voters and further, that the term "qualified elector" in the certificate specified in that section means the same thing. We deem it unnecessary to determine if the signers of plaintiff's petition must have been registered when they signed or registered only in time to vote. (Petitions must be submitted 45 days prior to election, N.J.S.A. 40:69A-153, but voters may register up to and including the 40th day prior to election, N.J.S.A. 19:31-6.) Plaintiff does not contend that any of the signers of the rejected certificates did in fact register in time for the election or *123 that he made any attempt, after examining the defective certificates, to get them to register.
Reference to prior New Jersey cases construing the phrase "legal voter" is appropriate in view of the attention given them in the opposing briefs. In Public Service Electric & Gas Co. v. City of Camden, 13 N.J. Misc. 693, 180 A. 778 (Sup. Ct. 1935), the court held that L. 1917, c. 152, Art. XXXIII, sec. 3; R.S. 40:62-15, which provided that a petition for a referendum vote on municipal acquisition of a public utility plant be signed by at least 20% of the "legal voters" of the municipality, meant registered voters. Cf. In re Ray, 26 N.J. Misc. 56, 56 A.2d 761 (Cir. Ct. 1947), where the court held that the words "legal voter" in R.S. 19:23-15 meant a person legally qualified to vote under the State Constitution, and not necessarily a registered voter. But there the court was not concerned with the qualifications of those signing the petition, but a qualification of the nominee himself, that being the subject matter of the statutory provision under consideration. Ray properly distinguished the Public Service case on that basis, since the policy requiring petitioners to be registered clearly did not apply to the nominee himself. Speaking of the Public Service case, the court said that it was "well within reason to understand why `legal voters' must be registered, as regards the sufficiency of a petition for submission to the voters of a proposal to increase the powers of a municipality. Without resort to the registration list, the governing body * * * would have no method of ascertaining the identity of the signers and their residences, or their other qualifications or disqualifications. * * * The only expeditious manner of determining who are eligible to vote is to consult the registry list." 26 N.J. Misc. at page 63. And contrast Richardson v. Radics, 131 N.J.L. 406 (Sup. Ct. 1944), reversing 21 N.J. Misc. 466 (Cir. Ct. 1943) and holding that the registration requirement did not apply to those in the armed forces since the Legislature had made special provision for absentee military voters. Cf. also Wright v. Lee, 125 N.J.L. 256 (Sup. Ct. 1940).
*124 As a second point, plaintiff contends that defendant failed to notify him as required under N.J.S.A. 40:69A-154 and give him proper opportunity to amend. That section, as noted, calls on the city clerk to designate the defect and to return the petition. We find no merit in the argument. Plaintiff was notified of the rejection by registered letter of March 31, 1958, the letter indicating that the rejection was the result of checking the signatures with the registration lists in the office of the Essex County Superintendent of Elections. If this be deemed technically insufficient under the statute because the letter did not specifically inform him of the breakdown of the rejected certificates by detailed category of defect, including lack of registration, and if the petition was not physically returned, it is undeniable that the letter served its purpose. It brought plaintiff to the city clerk's office almost at once, and there the information as to the precise reason for each individual rejection was given him when the certificates were made available to him for unrestricted inspection. We have mentioned that each certificate had on its face the reason for its rejection, and if there was any doubt in plaintiff's mind as to the validity of any rejection, he could readily have checked it against an official registration list.
In light of our determination, we need not consider defendant's argument that in any event plaintiff could not have validated his petition because under N.J.S.A. 19:13-13 no signatures could be added after the initial filing. (But see N.J.S.A. 40:69A-154(c), the Faulkner Act, stating that a rejected petition may again be presented when properly amended if this can be done at least 30 days before the election.) Suffice to say on this score that plaintiff made no attempt to amend his petition, nor does he aver that he would or could have cured the defects within the prescribed time.
There is an incidental argument by plaintiff that he was denied the equal protection of the law because defendant did not check in detail petitions which contained at least twice the required number of certificates. Plaintiff has not *125 shown how he, as a candidate, was harmed by such alleged practice. It was his burden in this proceeding to show that he fulfilled the statutory requisites for qualifying as a candidate and he has failed to do so. There was some testimony by defendant that experience over many years had shown that 63% of the signatures to a petition are valid. However, we have no occasion to pass upon the administrative justification for the practice of which plaintiff complains.
Affirmed.