136 N.J. Super. 424 (1975)
346 A.2d 605
CITIZENS FOR CHARTER CHANGE IN ESSEX COUNTY; JEANNE GRAVES; EDMUND T. HUME; AND RUTHI G. ZINN, INDIVIDUALLY AND AS CO-CHAIRMAN, TREASURER AND MEMBER, RESPECTIVELY, OF CITIZENS FOR CHARTER CHANGE IN ESSEX COUNTY, PLAINTIFFS-APPELLANTS,
v.
NICHOLAS V. CAPUTO, COUNTY CLERK OF ESSEX COUNTY AND JOSEPH ARANOFF, COMMISSIONER OF REGISTRATION OF ESSEX COUNTY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1975.
Decided October 6, 1975.
*425 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. David H. Ben-Asher, argued the cause for the appellants (Messrs. Baumgart & Ben-Asher, attorneys).
Mr. Francis Patrick McQuade, Essex County Counsel, argued the cause for the respondent Nicholas V. Caputo.
Mr. Gregory Nagy, Deputy Attorney General, argued the cause for the respondent Joseph Aranoff (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Plaintiffs seek to have placed on the ballot for submission to the voters of Essex County at the November 4 general election the question:
Shall the County Executive Plan of the Optional County Charter Law be adopted for Essex County, with provision for a Board of Freeholders of nine (9) members elected for concurrent terms and elected five (5) by district and four (4) at large? *426 To this end plaintiffs proceeded by direct petition under the pertinent provisions[1] of the Optional County Charter Law, L. 1972, c. 154, N.J.S.A. 40:41A-1 et seq., also referred to as the "Musto Act." The petition is required to be signed "by a number of registered voters not less than 15% of the number of persons registered to vote in the county as of 40 days before the primary or general election next preceding the date of filing of such petition." N.J.S.A. 40:41A-20. It is undisputed that the number of signatures required by that percentage is 56,721. Upon the filing of such petition the county clerk is, in the circumstances here presented, required to "cause the question to be submitted at the general election occurring not less than 60 days next following the filing of the petition * * *." N.J.S.A. 40:41A-21.
The provisions of the Optional County Charter Law permitting the adoption of an optional plan of county government upon petition and referendum, invoked by plaintiffs, omit any reference to the procedures for review of petitions so filed in order to determine their validity. Plaintiffs argue that since the Optional County Charter Law was in large measure modeled after the Optional Municipal Charter Law N.J.S.A. 40:69A-1 et seq. (Faulkner Act), the procedures for review provided in the Faulkner Act[2] should govern the review of petitions filed under the Musto Act. Defendants, however, argue that the absence of petition review procedures in the Optional County Charter Law brings into operation *427 the review provisions of the Elections Law, i.e., N.J.S.A. 19:13-13,[3] made applicable by N.J.S.A. 19:1-4.[4]
The pertinent initiative and referendum review provisions of the Musto Act read as follows:
All petition papers comprising an initiative or referendum petition shall be assembled and filed with the county clerk as one instrument. Within 20 days after a petition is filed, the county clerk shall determine whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified voters. After completing his examination of the petition, the county clerk shall certify the result thereof to the board at its next regular meeting. If he shall certify that the petition is insufficient he shall set forth in his certificate the particulars in which it is defective and shall at once notify at least two members of the committee of the petitioners of his findings. [N.J.S.A. 40:41A-107]
An initiative or referendum petition may be amended at any time within 10 days after the notification of insufficiency has been served by the county clerk, by filing a supplementary petition upon additional papers signed and filed as provided in case of an original petition. The county clerk shall, within 5 days after such an amendment is filed, examine the amended petition and, if the petition be still insufficient, he shall file his certificate to that effect in his office and notify the committee of the petitioners of his findings and no further action shall be had on such insufficient petition. The finding of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose. [N.J.S.A. 40:41A-108]
By September 5, 1975, the last day[5] for filing petitions for the November 4, 1975 general election under the direct petition and referendum sections of the Musto Act, N.J.S.A. 40:41A-19 through 22, plaintiffs had fined with the County *428 Clerk of Essex County their petitions seeking a referendum election upon the question hereinbefore set forth. The petitions contained 61,608 signatures. Plaintiffs requested the submission of the question to the voters at the forthcoming general election. By letter of September 8, 1975[6] a citizen's request was made to the county clerk for a "complete check of each and every name submitted to determine the validity and eligibility involved." On September 9, 1975 the county clerk requested the county commissioner of registration (commissioner) to review the signatures on the petitions and certify how many were valid and how many were not valid. Such review has been undertaken by the commissioner, who filed his final report thereon on October 1. On September 19 plaintiffs filed their complaint in lieu of prerogative writs in the Law Division, seeking various avenues of relief, all directed toward having the proposed public question placed on the November 4 election ballot. On September 26 the assignment judge for Essex County, after hearing, filed his judgment in the matter directing, among other things, that the Commissioner, in performing the validation process, "include as valid signatories all registered voters of the County of Essex who were registered as of September 5, 1975" but not those registered thereafter; that the commissioner complete the validation process by 4 P.M. on September 30, 1975; that on or before October 6, 1975 the county clerk rule on the commissioner's determinations regarding the validity of invalidity of the signatures;[7] and that the county clerk, if requested by plaintiffs, "hold and complete hearings contesting the determination of invalidity of any signatures on said petitions by no later than 4:00 P.M. October 10, 1975." Substantially all of the remaining relief sought by plaintiffs was either denied, held to be rendered moot or found to be premature.
*429 In his final report of October 1 the commissioner found that of the 61,608 signatures included in the petitions, 48,274 were valid. He found the remaining signatures invalid for a variety of reasons.[8] On October 2 plaintiffs filed their notice of appeal from the judgment entered in the Law Division. In it they raise the following issues:
1. That the portion of said judgment holding that all signatures submitted by plaintiffs-appellants on the petitions are not incontestably valid as not having been timely and specifically challenged, is erroneous;
2. That the portion of said judgment holding that in determining which signatures on said petitions are valid, plaintiffs-appellants are not entitled to have included all signatories registered to vote in Essex County by October 6, 1975, is erroneous;
3. That plaintiffs-appellants have a statutory right to file supplementary petitions within ten days subsequent to their notification of insufficiency of the original petitions. [Not adjudicated below]
While the judgment appealed from is in part interlocutory and in part final, we have, in light of the public interest involved and the brief period remaining before the general election, determined to review the entire matter on an accelerated basis. R. 2:9-2; R. 2:2-4.[9]
In its "Proposed Draft" of the Optional County Charter Law, the County and Municipal Government Study Commission commented on its proposed procedure for adoption, by direct petition and referendum, of an optional county form of government plan:
Comment 1.20. The provisions in this and the following sections are based on the Faulkner Act, with a 15% signature requirement *430 placed on the petitions to discourage this direct consideration method, simply because it does not permit sufficient study of the problems of county government and would therefore call the question to a vote prematurely and without a fair hearing. On the other hand, there may be situations in which this provision might be useful, both in the future and almost immediately. In fact, there are several counties which have undertaken substantial charter and/or administrative studies, and they might well wish to take this route to achieve their charter change more quickly, since they have already spent a great deal of time designing a suitable form of government. [at 15-16]
It is obvious that the Faulkner Act was used as the model for the Optional County Charter Law, the unmistakable design of each being to afford citizens broad participation in the selection of the optional form of local government best suited to meet their needs. There is nothing contained in the Musto Act which compels the conclusion that the Legislature intended an administrative review procedure for direct petitions under N.J.S.A. 40:41A-19 et seq. substantially different from that provided for similar direct petitions under the Faulkner Act. This being so, we must assume that the comparable situations were intended to be treated in the same way procedurally. We find no sound reason or policy for distinguishing between the two. The equity or spirit of the Optional County Charter Law directs this construction. Cf. 2A Sutherland, Statutory Construction (4th ed. C.D. Sands 1973), § 54.01 at 351-352 and § 54.08 at 375-376 Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 415 (1975). We are, accordingly, satisfied that the Legislature intended to subject direct petitions under N.J.S.A. 40:41A-19 et seq. to the procedural review provided in the initiative and referendum sections of the same legislation, N.J.S.A. 40:41A-107 and 108. Consistently, we are satisfied that the Legislature intended that petitioners, as here, should enjoy the right to amend an insufficient petition for referendum, a right similar to that provided under the Faulkner Act.
*431 Plaintiffs had actual notice by at least September 30, 1975 of the insufficiency of the petitions which they filed. In the circumstances they may at any time before 4 P.M. on Friday, October 10, 1975, amend those petitions "by filing a supplementary petition upon additional papers signed and filed as provided" in the case of the "original petition." N.J.S.A. 40:41A-108. The review of any such amendment is to be in accord with the procedure set forth in said § 108 of the Optional County Charter Law.
We find no merit in either of the remaining contentions advanced by plaintiffs. We have determined that the petitions are subject to the procedural review provided in N.J.S.A. 40:41A-107 and 108. The duties of the county clerk in regard to such review are clearly prescribed in these sections of the act. These duties include an examination of the petition to determine whether it "is signed by a sufficient number of qualified voters," and a certification of the result thereof. N.J.S.A. 40:41A-107. It is clear that in order to be counted as "qualified voters" the signers of the filed petitions must be registered voters of the county as of the time of original filing, in this case as of September 5, 1975, the last date of filing of the original petitions.
For the foregoing reasons plaintiffs may at any time before 4 P.M. on October 10, 1975 amend the original petition filed herein by filing a supplementary petition in accordance with the procedure set forth in N.J.S.A. 40:41A-108. If, from a review of the amended petition, it appears that the petition has been signed by a sufficient number of qualified voters who were registered voters of the County of Essex as of September 5, 1975, the proposed question shall be printed upon the ballot for submission to the voters of the county at the general election to be held November 4, 1975, in the manner prescribed by law.
We affirm the rulings of the assignment judge in regard to issues numbered "1" and "2" set forth in plaintiffs' notice of appeal.
NOTES
[1] N.J.S.A. 40:41A-19 through 22.
[2] The initiative and referendum review provisions (N.J.S.A. 40: 69A-187 and 188), made applicable by N.J.S.A. 40:69A-19 and N.J.S.A. 40:69A-1(b) to petitions calling for a vote on the question of adopting any of the optional plans of municipal government. Corresponding initiative and referendum review provisions are found in the Musto Act, i.e., at N.J.S.A. 40:41A-107 and 108.
[3] Under which amendments to defective petitions may be made "but not to add signatures."
[4] This section reads: "Except as in this title otherwise provided, the provisions for the election of public and party offices shall also apply to the determination of public questions under the referendum procedure so far as may be."
[5] Being 60 days before the general election to be held on November 4.
[6] Received by the county clerk on September 9, 1975.
[7] The County Clerk stipulated that he would accept the determination of the Commisioner in this regard.
[8] 7,808 for which there was no record of registration, 388 signatures which did not compare with those in the registration binders: 105 printed names (the voter having "used script writing on registration"); 83 illegible signatures; 810 incomplete signatures; 154 indicating residences outside of Essex County; and 3,986 duplicate signatures.
[9] We announced our decision orally following oral argument and informed counsel that a written opinion would be filed.