626 A.2d 1073

RAYMOND LESNIAK, PETITIONER–RESPONDENT AND CROSS–
APPELLANT, v. JOHN BUDZASH, RESPONDENT–APPELLANT
AND CROSS–RESPONDENT, AND DANIEL J. DALTON, SEC-
RETARY OF STATE OF NEW JERSEY, RESPONDENT–RE-
SPONDENT.

IN THE MATTER OF THE REPUBLICAN PRIMARY ELECTION
FOR STATE SENATE, 24TH DISTRICT, A/K/A KAMIN V.
DAGGETT.

Argued May 3, 1993—Decided May 3, 1993.
Opinion Filed July 7, 1993.

1

*Barry S. Segall* argued the cause for appellant and cross-respondent, John L. Budzash (*Toll & Segall,* attorneys).

*Gary A. Kraemer* argued the cause for appellant George T. Daggett (*Daggett & Kraemer,* attorneys).

*John E. Harrington* argued the cause for respondent and cross-appellant and submitted a letter brief on behalf of *amicus curiae* New Jersey Democratic Party.

*Alfred E. Ramey, Jr.,* Assistant Attorney General, argued the cause for respondent Daniel J. Dalton, Secretary of State of New Jersey (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Donald L. Kovach* argued the cause for respondent Richard Kamin (*Kovach, Fitzgibbons & Goovaerts,* attorneys).

*Carl J. Mayer, amicus curiae,* argued the cause *pro se.*

*Thomas W. Rubino* argued the cause on behalf of *amicus curiae* Donald C. Addison, Jr. (*Hartsough, Kenny, Innes & Kline,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

*N.J.S.A.* 19:23–7 requires that the signers of primary nomination petitions be "qualified voters of the State" and, among other things, that they be members of the political party of the candidate nominated by the petition. This appeal presents two questions: first, whether unregistered voters are "qualified voters" under *N.J.S.A.* 19:23–7; and second, whether unaffiliated voters are, for purposes of *N.J.S.A.* 19:23–7, members of the candidate's political party.

## I.

Two separate primary-election matters are addressed in this opinion. The facts of each are as follows:

### A. *Lesniak v. Budzash*

On April 15, 1992, John L. Budzash filed with the Secretary of State (Secretary) nomination petitions endorsing him as a candidate in the 1993 Democratic gubernatorial primary. Raymond Lesniak, Chairman of the Democratic Party, challenged the legal sufficiency of those petitions, asserting that they fell short of the 1,000 valid signatures required by *N.J.S.A.* 19:23–8 to place a gubernatorial candidate's name on the official primary ballot of the Democratic party.

The Secretary referred the matter to the Office of Administrative Law (OAL) for disposition as a contested case. The Administrative Law Judge (ALJ) found that Budzash's petition failed to meet the statutorily-prescribed minimum of 1,000 valid signatures. *See N.J.S.A.* 19:23–8. The ALJ recommended that the Secretary invalidate Budzash's nomination petitions. The Secretary adopted

the ALJ's decision, and the Appellate Division affirmed, 265 *N.J.Super.* 165, 625 *A.*2d 1139 (1993).

In a supplemental opinion dated April 29, 1993, the Appellate Division amended its decision to note that Budzash's petitions contained at most 1,099 signatures. Of the signatories, twenty-six were registered Republicans, ninety-one were not registered to vote, eleven were ineligible and 115 were unaffiliated voters. The court affirmed the Secretary's invalidation of the signatories who were registered Republicans and unregistered voters, thus causing Budzash's petition to fall short of the necessary 1000 valid signatures. The court stated, however, that in accordance with its opinion in *Mayer v. Addison,* 265 *N.J.Super.* 171, 625 *A.*2d 1143 (1993), the Secretary should not have invalidated the signatures of the unaffiliated voters.

Budzash filed a petition for certification, and Lesniak filed a cross-petition. On preliminary review, the Court remanded the matter to a Special Master for clarification and completion of the record notwithstanding any prior determinations of the Secretary. The Court also ordered supplemental briefing on the question of whether unaffiliated voters are eligible to sign primary petitions.

The Special Master, the Honorable Eugene D. Serpentelli, A.J.S.C., found that the number of signatures on the nominating petitions submitted by Budzash totalled at most 1140. He further found that at the time of signing the petition, 279 of these signatories were not registered voters, that 108 of the signatories were registered Republicans, and that 409 of the signatories were unaffiliated voters.

In view of the then-impending primary election, we reviewed the Special Master's findings and announced our decision shortly after oral argument. We concluded that the signatures of unregistered voters may not be counted and that unaffiliated voters may validly sign nominating petitions. Our opinion today explains that decision. In accordance with our decision, Budzash's name did not appear on the ballot as Democratic candidate for governor.

## B. *Kamin v. Daggett*

In the companion election matter, Richard Kamin challenged the nomination petition of George Daggett, a Republican candidate for the New Jersey Senate in the 24th legislative district. The main thrust of Kamin's objection was that the signatures of unaffiliated voters on Daggett's petition were invalid. The matter was referred to the OAL, and an ALJ held a hearing on the 48th day preceding the primary election. At the hearing Daggett amended his petition by filing Republican party affiliation cards for some of the undeclared voters. The ALJ concluded that although unaffiliated voters could not sign a primary-nomination petition, Daggett had timely cured his petition's defect by filing Republican party affiliation cards. *See N.J.S.A.* 19:13–13. Accordingly, he deemed Daggett's petition to be valid.

The Secretary of State affirmed the ALJ's decision that unaffiliated voters' signatures were invalid. He disagreed, however, with the ALJ's ruling that the petition had been cured. The Secretary claimed that under *N.J.S.A.* 19:23–45 the party-affiliation cards had to be submitted before the 50th day, not the 48th day preceding the primary election. The Secretary concluded that Daggett's nomination petition was invalid.

The Appellate Division reversed the Secretary's ruling substantially for the reasons set forth in the ALJ's decision. Both parties filed petitions for certification. We denied Kamin's petition, which presented the sole question of whether *N.J.S.A.* 19:13–13 allows the filing of party affiliation cards after the 50th day preceding a primary election. 133 *N.J.* 427, 627 *A.*2d 1134 (1993). We granted Daggett's cross-petition for certification, however, on the issue of whether unaffiliated voters for the purposes of *N.J.S.A.* 19:23–7 are members of that candidate's political party. 133 *N.J.* 442, 627 *A.*2d 1147 (1993). Shortly after oral argument we announced our decision that unaffiliated voters were qualified to sign Daggett's nomination petition. In accordance with that decision, Daggett's name did appear on the primary ballot.

## II.

### A.

We have "traditionally given a liberal interpretation to the election law." *Catania v. Haberle,* 123 *N.J.* 438, 448, 588 *A.*2d 374 (1991); *see Wene v. Meyner,* 13 *N.J.* 185, 197, 98 *A.*2d 573 (1953); *Kilmurray v. Gilfert,* 10 *N.J.* 435, 440–41, 91 *A.*2d 865 (1952). "Election laws are to be liberally construed so as to effectuate their purpose. They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons." *Kilmurray, supra,* 10 *N.J.* at 440, 91 *A.*2d 865 (citations omitted).

■ Although we have liberally construed the election laws, we have recognized that voting must remain subject to certain conditions. *See, e.g., Stevenson v. Gilfert,* 13 *N.J.* 496, 100 *A.*2d 490 (1953); *Wene, supra,* 13 *N.J.* at 192–93, 98 *A.*2d 573. States may "impose such other conditions as may be reasonably necessary to prevent election fraud and to facilitate administration of the electoral process." Note, *Primary Elections: The Real Party in Interest,* 27 *Rutgers L.Rev.* 298, 301 (1974).

Like general elections,

primary elections are of public concern. They afford the means by which political parties choose their candidates for public office; and, since the purpose to be served is public in its nature, the proceedings attending the selection of candidates are subject to regulation in the exercise of the police power.

[*Wene, supra,* 13 *N.J.* at 192, 98 *A.*2d 573.]

*N.J.S.A.* 19:23–7 sets forth the required contents of a party-nomination petition. That statute provides, in pertinent part:

Each such petition [of nomination] shall set forth that the signers thereof are qualified voters of the State, congressional district, county, or county election district, municipality, ward or election district, as the case may be, in which they reside and for which they desire to nominate candidates; that they are members of a political party (naming the same), * * * and that they intend to affiliate with that political party at the ensuing election; that they indorse the person or persons named in their petition as candidate or candidates for nomination for the office or offices therein named, and that they request that the name of the person or persons therein mentioned be printed upon the official primary ballots of their

political party as the candidate or candidates for such nomination. The petition shall further * * * certify that the person or persons so indorsed is or are * * * a member or members of the political party named in the petition.

In construing a statute, our fundamental duty is to effectuate the intent of the Legislature. *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992). We must consider the legislative policy underlying the statute and "any history which may be of aid." *State v. Madden,* 61 *N.J.* 377, 389, 294 *A.*2d 609 (1972). Although now regarded as a necessary adjunct to representative government, political parties were not born with the Republic but were created by necessity to coordinate efforts to secure needed legislation. *Ray v. Blair,* 343 *U.S.* 214, 221, 72 *S.Ct.* 654, 657, 96 *L.Ed.* 894, 899 (1952).

In *Stevenson, supra,* 13 *N.J.* 496, 100 *A.*2d 490, Justice Jacobs traced the development of political parties in New Jersey.

Prior to 1789 [New Jersey] had no statewide parties although there were county and sectional alignments. Nominations for office could readily be made by individuals and groups of individuals. However, following the first Congressional elections statewide political parties came into full being, conventions were held for the selection of party candidates, and party slates began to appear. Throughout most of the 19th Century party candidates were selected at conventions which were conducted without any state regulation whatever. In 1878 our Legislature passed its first enactments which related to party primaries and conventions. *L.* 1878, *cc.* 113, 204; *Boots, The Direct Primary in New Jersey* (1917), 15. There were later enactments and in 1898 a comprehensive revision of the election laws was adopted; they embodied only relatively minor provisions bearing upon primaries and conventions. However, in 1903 the Legislature adopted a supplement (*L.* 1903, *c.* 248) which dealt extensively with the subject and launched our now long-standing state policy of having fully regulated closed primaries.

[*Id.* at 499, 100 *A.*2d 490.]

Our election laws today embrace the accepted traditions of the party convention tempered by the recognition that a party's candidate-selection process is of public concern. "The selection of nominees by political parties plays a crucial role in the electoral system. Indeed, the nomination of candidates by the major parties has been called the 'most critical stage' of the electoral process." Note, *Developments—Election Law,* 88 *Harv.L.Rev.* 1111, 1151 (1975) (hereinafter *Developments* ). As such, we have

long recognized that the "Legislature may invoke measures reasonably appropriate to secure the integrity of the nominating process in the service of the community welfare." *Wene, supra*, 13 *N.J.* at 192, 98 *A.*2d 573.

### B.

■ First we consider whether an unregistered voter is a "qualified voter" under *N.J.S.A.* 19:23–7. In order for elections to take place, some State regulation is necessary. *Developments, supra*, 88 *Harv.L.Rev.* at 1115. All states regulate the electoral process. "At a minimum, states must establish a time and place for voting, create a means by which persons desiring to vote can register their preferences, and retain persons to receive and count the votes and announce the winner." *Ibid.* One of the most common forms of restriction is the registration requirement, which is designed "to ensure that only eligible persons vote and [ ] that they vote only once." *Id.* at 1116. Like most states New Jersey imposes registration requirements on its voters. *N.J.S.A.* 19:31–1 provides: "No person shall be permitted to vote at any election unless such person shall have been permanently registered * * *." *N.J.S.A.* 19:23–45 provides, in pertinent part, that "no voter shall be allowed to vote at the primary election unless his name appears in the signature copy register."

That several unregistered voters signed Budzash's petitions is undisputed. He contends that those unregistered voters are "qualified voters" under the terms of *N.J.S.A.* 19:23–7. He asserts that "qualified voters" are voters who qualify to vote under the terms of the New Jersey Constitution. Because there is no constitutional requirement that a voter be registered, Budzash reasons that an unregistered voter is qualified to sign a nominating petition. We find defendant's argument unpersuasive.

■ The right to vote in New Jersey is secured by Article II, section 3 of the New Jersey Constitution. It provides:

Every citizen of the United States, of the age of 18 years, who shall have been a resident of this State and of the county in which he claims his vote 30 days, next

before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people * * *.

The Legislature may reasonably regulate that right so long as "the constitutional qualifications of electors are not enlarged by the lawmaking authority." *Gangemi v. Berry*, 25 *N.J.* 1, 12, 134 *A.*2d 1 (1957); *see also Stevenson, supra*, 13 *N.J.* at 500, 100 *A.*2d 490. The requirement that all New Jersey voters must register is a reasonable regulation of that right to vote.

[Registration] is not a qualification for voting, for the Constitution exhausts that subject in *Article* II. Rather registration is upheld as part of the regulatory machinery intended to protect the right to vote. The reason is that without a suitable method to prepare an authentic list of qualified voters in advance of election day, the confusion at the polls and the opportunity for fraudulent ballots might jeopardize the election process.

[*Gangemi v. Rosengard*, 44 *N.J.* 166, 172–73, 207 *A.*2d 665 (1965) (citing *In re Ray*, 26 *N.J.Misc.* 56, 61, 56 *A.*2d 761 (Cir.Ct.1947)).]

Our construction of the term "qualified voters" in *N.J.S.A.* 19:23–7 effectuates the Legislature's intent to prevent fraud and wrongdoing in the nominating process. *See Sadloch v. Allan*, 25 *N.J.* 118, 129, 135 *A.*2d 173 (1957); *McCaskey v. Kirchoff*, 56 *N.J.Super.* 178, 183, 152 *A.*2d 140 (App.Div.1959). The nominating petition and the primary election are the central events in a party's selection of a candidate. If a party's candidate-selection process is to perform its lawful and intended function of providing legitimate candidates for the general election, it must be kept free from fraud and manipulation in the signing of nomination petitions. The registration requirement enables election officials to verify that only registered voters have signed the nomination petitions. Indeed, the only expeditious manner of determining who is eligible to sign the nomination petition is to consult the registration list. *See Johnson v. Reichenstein*, 50 *N.J.Super.* 116, 123, 141 *A.*2d 76 (App.Div.1958).

Our construction of the term "qualified voters" in *N.J.S.A.* 19:23–7 is also consistent with past constructions of similar terms in related statutes. In *Matthews v. City of Atlantic City*, 84 *N.J.* 153, 417 *A.*2d 1011 (1980), we noted that by common understanding the term "qualified elector" in *N.J.S.A.* 40:75–4 means a

registered voter. *Id.* at 156 n. 2, 417 *A.*2d 1011. That statute requires signers of a nomination petition to certify that the candidate is "a qualified elector of the municipality." In *Citizens for Charter Change v. Caputo,* 136 *N.J.Super.* 424, 431, 346 *A.*2d 605 (App.Div.), *certif. denied,* 74 *N.J.* 268, 377 *A.*2d 652 (1975), the court held that to be considered as "qualified voters" under the Optional County Charter Law, the signers of nomination petitions must be registered voters of the county at the time of filing the petition. In *In re Ross Petition,* 116 *N.J.Super.* 178, 281 *A.*2d 393 (1971), the Appellate Division construed *N.J.S.A.* 19:13–5, which sets forth the number of legally-qualified-voter signatures required on a petition for direct nomination. The court concluded that registration as a voter is a prerequisite to the right validly to sign a nominating petition.

■ Likewise, in *Johnson, supra,* 50 *N.J.Super.* 116, 141 *A.*2d 76, the Appellate Division held that the term "legally qualified voters" in *N.J.S.A.* 40:69A–153 referred to registered voters. That statute provided that the number of signatures on a petition for nomination of candidates for municipal office must be signed by a certain percentage of the "legally qualified voters" of the municipality. The court noted that if it were to interpret "legally qualified voters" to mean qualified only in the constitutional sense, "it would become impossible to determine the number of petitioners required." *Id.* at 121, 141 *A.*2d 76. Likewise *N.J.S.A.* 19:23–8 provides that for the name of a candidate in a statewide election to be placed on a primary ballot, the candidate's nomination petition must be signed by 1000 voters. If those signatories need be only constitutionally eligible to vote, their signatures would be impossible to verify and *N.J.S.A.* 19:23–8 would be impossible to implement. In *Public Service Electric & Gas Company v. City of Camden,* 13 *N.J.Misc.* 693, 180 *A.* 778 (Sup.Ct.1935), the court held that the term "legal voters" in *N.J.S.A.* 40:62–15 contemplated only registered voters. That statute provided that a petition for a referendum vote on the municipal acquisition of a public-utility plant must be signed by at least twenty percent of the "legal voters" of the municipality.

Moreover, our construction of *N.J.S.A.* 19:23–7 is consistent with the statutory scheme established by the Legislature for the reasonable regulation of the right to vote. *See Waterfront Comm'n v. Mercedes–Benz,* 99 *N.J.* 402, 414, 493 *A.*2d 504 (1985). *N.J.S.A.* 19:31–1 and *N.J.S.A.* 19:23–45 both require that all voters be registered.

We therefore conclude that the Legislature intended that a person not qualified to cast a ballot in the primary election is not qualified to sign the primary-nomination petition. Voters must be registered in order to be considered "qualified" to sign a party-nomination petition under the terms of *N.J.S.A.* 19:23–7. Such a requirement is a legitimate, reasonable, and constitutional regulation of the primary process. Accordingly, the 279 signatures of unregistered votes on Budzash's nominating petitions are not valid.

## C.

■ We now consider an unaffiliated voter's right to sign a party's nomination petition. *N.J.S.A.* 19:23–7 requires that the signers of a nominating petition must be members of the candidate's political party. Because an unaffiliated voter is by definition not a member of a political party, the question becomes whether an unaffiliated voter can declare his or her party affiliation by signing a candidate's nominating petition.

*N.J.S.A.* 19:23–45 sets forth the ways that a voter establishes membership in a political party. It provides, in pertinent part, that

> [a] voter who votes in a primary election of a political party or who signs and files with the municipal clerk or the county commissioner of registration a declaration that he desires to vote in the primary election of a political party shall be deemed to be a member of that party until he signs and files a declaration that he desires to vote in the primary election of another political party at which time he shall be deemed to be a member of such other political party. The Secretary of State shall cause to be prepared political party affiliation declaration forms and shall provide such forms to the commissioners of registration of the several counties and to the clerks of the municipalities within such counties.

> No voter, except a newly registered voter at the first primary at which he is eligible to vote, or a voter who has not previously voted in a primary election, may vote in a primary election of a political party unless he was deemed to be a member of that party on the fiftieth day next preceding such primary election.

Under the terms of that statute, unaffiliated voters are newly-registered voters at the first primary at which they are eligible to vote and voters who have not previously voted in a primary election. An unaffiliated voter may declare his or her party membership by voting in a primary election or by filing a party-declaration form. The voter remains a member of that political party and can vote in its primary election only until he or she files a party-declaration form expressing the intent to be a member of another political party.

*N.J.S.A.* 19:23–45, however, makes no specific provision for declaring party membership through the act of signing a candidate's nomination petition. Lesniak and Kamin argue that *N.J.S.A.* 19:23–45 sets forth the exclusive method for establishing party membership. Therefore, unaffiliated voters cannot declare party membership by signing a nomination petition. We disagree and find that a voter's signature on the nomination petition fulfills the basic requirements for declaring party membership.

*N.J.A.C.* 15:10–2.2, which sets forth who must file a declaration of party membership, specifically provides that

> (b) A voter who has never previously participated in a primary election under the voter's current registration *need not file* a declaration of party membership. (Emphasis added).

Thus, the Secretary acknowledges that an unaffiliated voter need not sign a party declaration to declare his or her party membership.

Furthermore, the statutes contain no requirement that declaration of political-party membership be made on the Secretary's "party declaration form." Indeed, *N.J.A.C.* 15:10–2.6(b) specifically permits the use of any written statement. It provides:

> Any voter wishing to file a declaration of political party membership is not required to use those forms provided by the Secretary of State. However, the voter should prepare a written statement indicating that he or she is a member of a political party. The statement should be signed by the voter. The name and full address should appear and the statement should be dated by the voter.

An unaffiliated voter meets those requirements by providing his or her signature and address and the date on the primary nomination petition prepared by the Secretary. That petition states:

> Each signer of this petition certifies that the following statements are true: 1) I reside in the State of New Jersey; 2) I am a qualified voter therein; 3) I am a member of the _____ party; 4) I intend to affiliate with the said party at the ensuing election; 5) I endorse the person hereinafter mentioned as candidate for nomination for the office of Governor; 6) I believe the said person so endorsed is legally qualified under the laws of this State to be nominated for said office, and is a member of the political party named in this petition; 7) I request that you cause to be printed upon the official primary ballot of the said party the name of said person as the candidate for such nomination.

That an unaffiliated voter may declare party membership by signing a nomination petition is supported by the pamphlet entitled *Elections Made Easy*, published by the Department of State as a simplified guide to New Jersey Election Law. The pamphlet interprets *N.J.S.A.* 19:23–7 to require the following:

> Signers of petitions pledge that they:
> — are qualified voters
> — are members of the candidate's party
> — *intend to affiliate with the party at the primary if not previously affiliated*
> — endorse the person as a candidate for nomination for the named office.
> [New Jersey Department of State, *Elections Made Easy* 19 (1992–93) (emphasis added).]

Although we acknowledge that the Secretary is not bound by that instruction, the pamphlet's drafter obviously thought that an unaffiliated voter was permitted to sign a nomination petition in a primary so long as he or she intended to affiliate with that party in the primary.

 Moreover, the challenger's logic leads to the anomalous result that an unaffiliated voter can declare party membership by voting in the primary election but not by certifying his or her intent to affiliate with that party at the ensuing election. A statute is not to be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. *Wene, supra,* 13 *N.J.* at 197, 98 *A.*2d 573. The reason of the statute prevails over the literal sense of its terms. *Ibid.* An examination of the underlying policies of *N.J.S.A.* 19:23–45 and the mischief it seeks to eliminate

reveals that an unaffiliated voter can declare membership in a political party by certifying his or her intent to affiliate in that party's nominating petition.

In *Smith v. Penta,* 81 *N.J.* 65, 405 *A.*2d 350, *appeal dismissed,* 444 *U.S.* 986, 100 *S.Ct.* 515, 62 *L.Ed.*2d 416 (1979), we upheld the constitutional validity of the party-affiliation requirements set forth in *N.J.S.A.* 19:23-45. We noted that restricting participation in the candidate-selection process to members of a political party advances two significant interests. *Id.* 81 *N.J.* at 69, 405 *A.*2d 350. First, it protects the associational rights of the party's membership " 'from intrusion by those with adverse political principles.' " *Nader v. Schaffer,* 417 *F.Supp.* 837, 845 (D.Conn.) (quoting *Ray v. Blair,* 343 *U.S.* 214, 220-21, 72 *S.Ct.* 654, 658, 96 *L.Ed.* 894, 899 (1952)), *aff'd,* 429 *U.S.* 989, 97 *S.Ct.* 516, 50 *L.Ed.*2d 602 (1976). One way political parties advance shared beliefs is by selecting candidates representing those shared beliefs to run in the general election.

> If a political party, * * *, must admit any and all who wish to vote in its primary election, there would then certainly ensue an erosion in the cohesive partisanship that is basic to the party's strength. A political primary election is something other than a purely public event insofar as it affords an opportunity to adherents of some political philosophy to advance their goals, proselytize their beliefs and seek to acquire or perpetuate their power.
>
> [*Smith, supra,* 81 *N.J.* at 76-77, 405 *A.*2d 350.]

The right to participate in a party's candidate-selection process thus vests only in those who are associated together in pursuit of shared political ideals.

Second, limiting participation protects the integrity of the electoral process.

> "This includes preserving parties as viable and identifiable interest groups; insuring that the results of primary elections, in a broad sense, accurately reflect the voting of party members. Parties should be able to avoid primary election outcomes which will confuse or mislead the general electorate to the extent it relies on party labels as representative of certain ideologies; and preventing fraudulent and deceptive conduct which mars the nominating process.
>
> * * * * * * * *

As we have noted, the phrase 'preservation of the integrity of the electoral process' contemplates, in the nominating context, the assurance that primary election results reflect the will of party members, undistorted by the votes of those unconcerned with, if not actually hostile to, the principles, philosophies, and goals of the party. The phrase contemplates the prevention of fraud in the nominating process, and a candidacy determined by the votes of non-party members is arguably a fraudulent candidacy."

[*Id.* at 71–72, 405 *A.*2d 350 (quoting *Nader, supra,* 417 *F.Supp.* at 845).]

A third interest, not discussed in *Smith v. Penta,* but implicated in restricting participation in a party's candidate-selector process, is an individual voter's right to associate with the political party of his or her choice. *Williams v. Rhodes,* 393 *U.S.* 23, 30, 89 *S.Ct.* 5, 10, 21 *L.Ed.*2d 24, 31 (1968).

Lesniak and Kamin, however, argue that allowing unaffiliated voters to sign nomination petitions is contrary to New Jersey's strong policy of closed primary elections. Specifically, they contend that it allows disaffected or hostile independent voters the right to interfere with a party by nominating a candidate for one party and voting for a candidate of another party in the same primary.

We acknowledge that the public has an interest in maintaining the integrity of the electoral process. That interest is fostered by legislation, such as *N.J.S.A.* 19:23–45, that is designed to prevent "raiding." *Smith, supra,* 81 *N.J.* at 77, 405 *A.*2d 350. "Raiding occurs where members of one party vote in the primary of the opposition party in the hopes of electing a weak candidate or a 'straw man' who could easily be defeated by the candidate of their true party in the general election." *Pontikes v. Kusper,* 345 *F.Supp.* 1104, 1113 (N.D.Ill.1972) (Marovitz, J. dissenting), *aff'd sub nom. Kusper v. Pontikes,* 414 *U.S.* 51, 94 *S.Ct.* 303, 38 *L.Ed.*2d 260 (1973). Although we agree that theoretically an unaffiliated voter could sign a petition and vote for another candidate, we do not think realistically that that presents much of a problem. Indeed, a raid on a political party by an unaffiliated voter is "a curious concept only distantly related" to one party's raid on another. *Tashjian v. Republican Party of Connecticut,* 479 *U.S.* 208, 219, 107 *S.Ct.* 544, 551, 93 *L.Ed.*2d 514, 526 (1986).

We see no reason to distinguish between an unaffiliated voter who wishes to declare his or her party membership by signing a primary candidate's nomination petition and an unaffiliated voter who wishes to do so by voting in the party's primary election. Each act is central to a political party's selection of a candidate, and each act demonstrates a voter's intent to affiliate with that party. Allowing an unaffiliated voter to affiliate with a political party by signing a nomination petition provides an appropriate and reasonable accommodation between the public's interest in the selection of its candidates and the associational interests of regular party members. The Legislature has determined that the integrity of the political party structure is not destroyed by allowing unaffiliated voters to vote in a primary; therefore, we do not think that the integrity of the system will be destroyed by allowing an unaffiliated voter to sign a nomination petition.

Our holding merely effectuates the intent of the Legislature set forth in *N.J.S.A.* 19:23–45. It promotes the consistent application of that balance struck by the Legislature in *N.J.S.A.* 19:23–45 among the competing interests in a party's candidate-selection process: the integrity of the electoral process, the party's right of association, and the voter's right to associate with the party of his or her choice. Our holding also furthers the intent of the Legislature, demonstrated by *N.J.S.A.* 19:23–8's requirement that only 1,000 signatures are needed on a petition for nomination for statewide office, to promote participation in the candidate-selection process, and to give voters more choices in a primary election.

### III.

We therefore conclude that for the purposes of *N.J.S.A.* 19:23–7, unregistered voters are not "qualified voters," and unaffiliated voters are eligible to declare party membership by signing a party-nomination petition.

The judgments of the Appellate Division in the two matters before us are affirmed as modified by this opinion.

CLIFFORD, J., dissenting in part and concurring in part.

Election laws are entitled to a liberal construction to effectuate their underlying purpose. *Kilmurray v. Gilfert*, 10 *N.J.* 435, 440, 91 *A.*2d 865 (1952). They should not, however, be subjected to the indignity of a liberal *mis*construction as part of a well-intentioned but wholly-misguided effort to effectuate that purpose—to encourage the greatest possible participation in the political process. For me this is not a close case. The pertinent statutes, *N.J.S.A.* 19:23–7 and *N.J.S.A.* 19:23–45, and administrative regulation, *N.J.A.C.* 15:10–2.1, make clear beyond question that unaffiliated voters do not qualify as "members of a political party" and therefore are not eligible to sign a candidate's nominating petition.

*N.J.S.A.* 19:23–7 provides in pertinent part that a nominating petition

> shall set forth that the signers thereof are qualified voters of the State, congressional district, county, or county election district, municipality, ward or election district * * * in which they reside and for which they desire to nominate candidates; that *they are members of a political party* (naming the same), * * * and that they intend to affiliate with that political party at the ensuing election * * *. (Emphasis added).

*N.J.S.A.* 19:23–45 sets forth the requirements for becoming a member of a party. That statute provides that

> [a] voter who votes in a primary election of a political party or who signs and *files with the municipal clerk or the county commissioner of registration* a declaration that he desires to vote in the primary election of a political party shall be deemed to be a member of that party until he signs and files a declaration that he desires to vote in the primary election of another political party at which time he shall be deemed to be a member of such other political party. (Emphasis added).

Therefore, as the majority must concede, "*N.J.S.A.* 19:23–45 * * * makes no specific provision for declaring party membership through the act of signing a candidate's nominating petition." *Ante* at 13, 626 *A.*2d at 1079. The statute provides for only two methods of attaining party membership: either (1) voting in a party's primary, or (2) signing and filing an appropriate declaration with the municipal clerk or the county commissioner of registration.

Moreover, the administrative regulations promulgated to effectuate the election laws reinforce the conclusion that a person does

not become a member of a party by signing a candidate's nominating petition. *N.J.A.C.* 15:10–2.1 provides that

[a] voter becomes a member of a political party by * * *:

1. Having voted in a previous primary of that party;

2. By filing a declaration of membership in that party. That declaration must be signed and *filed with the municipal clerk or appropriate county election officer* no later than the 50th day preceding the primary. However, a voter who has not voted in a party primary may vote in any primary without filing any declaration.

3. By being a member of the county committee of the party of a public official holding office to which he has been elected or appointed as a member of that political party.

Simply put, no provision of the statutory or administrative law permits a person to become a member of a political party by signing a nominating petition.

Our purpose in construing a statute is to effectuate the intent of the Legislature. *Merin v. Maglaki*, 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992). The Legislature has nowhere approved the method of attaining party membership invented today by the Court. Furthermore, an analysis of the procedures involved in the filings of a party-declaration statement and a nominating petition demonstrates clearly that the Legislature did not intend that a nominating petition serve the other's purpose, despite the similarity of the forms of declaration attached to each as noted by the majority. See *ante* at 13, 626 *A.*2d at 1079.

A party-declaration statement has effect only if delivered to the correct county or municipal election representative; in contrast, however, our election laws make no provision for the forwarding of a nominating petition of a candidate for statewide office from the Secretary of State's office to those same officials. The nominating petition must be delivered to the Secretary of State by the fiftieth day preceding the election, *N.J.S.A.* 19:23–6, but a party-declaration statement must be delivered to the local officials by that same day, *N.J.S.A.* 19:23–45. Unless candidates are required now to deliver a copy of the petition to those local election officers, the Court must come up with some implied-delivery theory that holds that delivery to the Secretary of State satisfies the delivery

requirement, despite the unambiguous words of the relevant statute.

As still further evidence that the Legislature did not intend that the signing of a nominating petition satisfy the requisites for party membership, the State currently has no mechanism for recording party membership by virtue of the signing of a nominating petition. At present, no office examines the nominating petitions and amends local registration records accordingly. Furthermore, the Court's determination that signing a nominating petition for a candidate for a party makes a person a member of that party produces a gaping crevasse in the statutory framework. Under the Court's interpretation, a person who has signed a nominating petition for a candidate has become a member of that candidate's party even if the signer fails to vote in the ensuing primary. Why then does *N.J.S.A.* 19:23-45 not require that person thereafter to file a declaration to change parties when it expressly requires the filing of a declaration by persons who had voted in another party's primary or filed a declaration indicating membership in another party?

The answer, of course, is that the Legislature did not intend a signature on a candidate's nominating petition to satisfy the requirements of a declaration of party membership. Primaries exist because parties exist, and the importance of parties lies at the core of New Jersey's closed-primary system. Therefore, parties demand some significant demonstration of the desire to affiliate with the party before they will accept a person as a member.

The demonstration of loyalty that the Legislature has required is that a person vote in a party's primary or sign and file an appropriate declaration. Those requirements surely are not irrational, and the formality of those activities contrasts sharply with the process for providing a signature on a nominating petition. Oftentimes a candidate's representatives will gather signatures on the street, and many who sign a petition likely intend their signature as an expression of support for a person—not a party.

Indeed, many unaffiliated voters may not realize that their signature on a nominating petition henceforth will be deemed to have made them members of a political party. Cherishing their political independence and "unaffiliated" status, they may very well be appalled at the prospect of being branded with a party label.

I therefore dissent from so much of the Court's judgments in the appeals before us as hold that unaffiliated voters are eligible to sign a nominating petition.

Nevertheless, I concur in the Court's judgment that George Daggett's name properly appeared on the primary ballot as a candidate for the Republican nomination for Senate in the 24th district. Although Daggett's original petition was defective, he cured that petition by timely filing Republican-party-declaration cards for several of the previously-unaffiliated voters who had signed his petition. *See N.J.S.A.* 19:13–13. Therefore, his petition contained a sufficient number of signatures of "party members" to render his petition valid, and his name was entitled to be included on the ballot.

Justice POLLOCK joins in this opinion.

*For Modification and affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, OHERN, GARIBALDI and STEIN—7.

*Concurring in part; dissenting in part*—Justices CLIFFORD and POLLOCK—2.