116 N.J. Super. 178 (1971)
281 A.2d 393
IN RE: CHARLES ROSS PETITION FOR NOMINATION FOR GENERAL ELECTION, NOVEMBER 2, 1971, PETITION FOR STATE SENATOR SECOND SENATE DISTRICT FILED APRIL 29, 1971.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1971.
Decided September 15, 1971.
*181 Before Judges LEWIS, KOLOVSKY and HALPERN.
Mr. Henry Gorelick argued the cause for appellant, Objector John L. Toy, Jr. (Messrs. Hayman & Gorelick, attorneys).
Mr. Charles Ross, Candidate, argued the cause pro se.
Mrs. Virginia L. Annich, Deputy Attorney General, argued the cause for the Attorney General (Mr. George F. Kugler, Jr., Attorney General; Mr. Dennis J. Quinn, Deputy Attorney General, on the brief).
The opinion of the court was delivered by LEWIS, P.J.A.D.
The appeal in this controversy by John L. Toy, Jr. (objector), challenging the direct nominating petition of Charles Ross (candidate) for the office of State Senator, Second Senate District, was accelerated for oral argument on September 14, 1971. The following day we announced that a unanimous opinion of the court would be filed affirming the determination of the Secretary of State that candidate's petition would be accepted as valid.
On April 29, 1971 candidate filed with the Secretary of State his nominating petition, for the November 2, 1971 general election, on two "sheets" which originally contained 135 signatures. Candidate reduced the number of signatures on the "sheets" to 123 when immediately before filing he voluntarily struck 12 names. On May 3 (a weekend intervening) objector, acting as a private citizen and not in his capacity as chairman of the Atlantic County Board of Elections, filed an objection to the petition, certifying that he had examined the registry books and records of the election board and that the petition did not contain the required 100 names of registered voters in the election district. Notice *182 thereof was forwarded by the Secretary of State's office to the candidate on May 10.
A hearing on the objection was held on May 26 before the Assistant Secretary of State, at which time objector challenged 28 petition names  2 for late registration, 25 for no record of registration and 1 as a subscriber who wished to withdraw her signature. The hearing was adjourned to June 25 in order to afford the candidate an opportunity to refute the objector's claim and to afford both parties additional time to present their proofs. At the adjourned hearing objector sought to disqualify an additional three signatories, who, together with a signer who had been otherwise challenged at the May meeting, desired to have their names deleted from the petition.
At the conclusion of the second hearing the hearing officer made it clear to both parties that any additional information "that will help us make a decision" had to be submitted by June 30. On July 1 objector produced records that allegedly might support four new challenges. This evidence was rejected presumably because it was untimely submitted, candidate had not had an opportunity to rebut it and the hearing had been closed.
The decision on behalf of the Secretary of State, rendered July 12, validated 8 and disqualified 23 of the 31 challenged signatures. The opinion concluded with the statement, "It is the decision of the Hearing Officer that the petition of Charles Ross had one hundred (100) valid signers at the shutoff date June 30th and for that reason the petition will be accepted by the Office of the Secretary of State as filed April 29, 1971."
Here, objector attacks the nominating petition in its entirety, contending that it was not properly certified as required by law and that it was not circulated in good faith. Additionally, he maintains that the petition was signed by fewer than the required number of legally qualified voters.
First, we dispose of the arguments addressed to the petition as a whole. Each of its two component "sheets" *183 was certified by five voters, as provided by N.J.S.A. 19:13-6 and 7. The same five voters, however, did not certify both "sheets." That is not required. See In re Petition of Job, 111 N.J. Super. 170, 173 (App. Div.), certif. den. 57 N.J. 124 (1970). The issue has now been squarely put to rest by the decision of our Supreme Court in In re Petition of Smith, etc., 59 N.J. 236 (September 13, 1971), holding that "The legitimate statutory objective [N.J.S.A. 19:13-7] may be met by a single verification * * * and no more." The instant petition was adequately certified.
The record is barren of any evidence of fraud, forgery or wrongdoing such as that condemned by this court in McCaskey v. Kirchoff, 56 N.J. Super. 178 (App. Div. 1959). Objector failed to support his contention that candidate and his petition solicitors engaged in misrepresentation and concealment.
The fact that certain petition signers, who ostensibly pledged their support to Ross, voted for party candidates in the June 8, 1971 primary election, is not, without more, evidentiary of candidate's bad faith.
Substance is also lacking in the assertion that the candidate demonstrated bad faith in striking 12 names from his petition. It appears that candidate's action in this regard stemmed from a desire to avoid political embarrassment to certain friends and that their signatures were stricken only after candidate discussed the matter with a representative of the Secretary of State's office immediately prior to the filing of his petition. Nothing in the record indicates candidate's lack of good faith or that he violated N.J.S.A. 19:34-2. At this juncture, however, it is noted that the right of a candidate to voluntarily strike any name affixed to his nominating petition before it is filed may be seriously questioned but that issue is not before us and we do not pass upon it.
We turn now to the specific signatures challenged on appeal in support of objector's claim that, contrary to the determination of the Secretary of State, the nominating petition *184 was signed by fewer than the 100 legally qualified voters required by N.J.S.A. 19:13-5.
It is undisputed that Hughes and Costello signed the petition on April 27, 1971 and did not register to vote until April 29, 1971, the day the petition was filed. The latter date is significant because it was the final filing day for direct nominating petitions for the November 2, 1971 general election and also the registration deadline for the June 8, 1971 primary election. Consequently, Hughes and Costello were qualified to support candidate Ross by petition as early as any citizen had to be qualified to support a party candidate in the primary election. Cf. Stone v. Wyckoff, 102 N.J. Super. 26, 35 (App. Div.), certif. den. 52 N.J. 254 (1968). Also registration on or before the final day for filing a petition presents no administrative problem with respect to an objector's opportunity to challenge the validity of the petition, or with respect to verification of signatures by the Secretary of State. Johnson v. Reichenstein, 50 N.J. Super. 116, 122 (App. Div. 1958). These practical considerations are reinforced by the well-established principle that our election laws are to be given a liberal construction in order to effectuate a public policy in favor of the enfranchisement of voters. See e.g., Wene v. Meyner, 13 N.J. 185, 197 (1953); Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952). Accordingly, we conclude that the decision of the Secretary of State not to disqualify Hughes and Costello should be sustained.
The hearing officer refused to delete the signatures of Rinaldi, Ianarello, Raco and Laco, who had indicated a desire to withdraw their names from the petition. We find no impropriety in that determination. The general rule is that signatories to a nominating petition may not withdraw after the time for filing has expired. See 25 Am. Jur.2d, Elections, § 173 at 868; Annotation, "Right of signer of petition or remonstrance to withdraw therefrom or revoke withdrawal, and time therefor," 27 A.L.R.2d 604, 622 (1953). To hold otherwise would open the door to the possibility *185 of the use of fraud and coercion to keep political aspirants off the ballot.
Lastly, objector maintains that the hearing officer erred in refusing to consider the evidence proffered after the deadline fixed at the June 25 hearing. It is urged that at least one, if not more of the four untimely additional challenges would probably result in a disqualification and thus render the petition legally insufficient.
We are satisfied that the ruling of the hearing officer was a reasonable exercise of his administrative discretion, within the broad powers of N.J.S.A. 19:13-11. Time is of the essence in most election controversies. Therefore, it is essential that administrative agencies responsible for the initial resolution of election disputes in which time is a crucial factor be permitted to establish reasonable deadlines for receipt of evidence, and that reviewing courts recognize the necessity for strict adherence to these deadlines.
In the instant matter the petition was filed April 29 and the objector, who occupied an official position on the local election board, was afforded two hearing opportunities, May 26 and June 25, and an extended time to June 30, to present and sustain his objections. At the close of the second hearing candidate urged an expeditious decision because the time for campaigning was rapidly passing. The reception of challenges to additional signatures after the "shut-off date" would have necessitated, in fairness to candidate, still another hearing to afford him an opportunity to refute objector's belated claims.
The determination of the Secretary of State is affirmed.