244 N.J. Super. 229 (1990)
581 A.2d 1359
BRUCE I. AFRAN AND JOYCE G. AFRAN, PLAINTIFFS-APPELLANTS,
v.
COUNTY OF SOMERSET, COUNTY OF MERCER, DEFENDANTS-RESPONDENTS, STATE OF NEW JERSEY, DEFENDANT-INTERVENOR.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1990.
Decided November 1, 1990.
*230 Before Judges PRESSLER, BAIME and ARNOLD M. STEIN.
Bruce I. Afran argued the cause for appellants.
R. Brian McLaughlin, Deputy Attorney General, argued the cause for respondents, Somerset County Board of Elections and Mercer County Superintendent of Elections (Robert J. Del Tufo, Attorney General, attorney; R. Brian McLaughlin, on the letter brief).
Michael Camesino, County Attorney, argued the cause for the County of Somerset, respondent; and relied upon the letter brief filed by R. Brian McLaughlin, D.A.G.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiffs appeal from the denial by the Law Division of their application for an order authorizing them to vote in the general election of November 6, 1990. We heard the appeal on an emergent basis and now reverse.
The facts are undisputed. Plaintiffs Bruce I. Afran and Joyce G. Afran resided for some time in Franklin Township in Somerset County where they were qualified and registered voters. On October 25, 1990, they moved to Princeton Borough in Mercer County. Their change of residence thus occurred within 30 days of the general election. Upon inquiry of the Somerset County Clerk, they were advised that they would not be permitted to vote in that County since they no longer resided there. They also correctly understood that they could not vote in Mercer County since they were not there registered and *231 could not be registered there in time to vote in the 1990 general election. Accordingly, they instituted this action in Somerset County by order to show cause seeking to enforce their franchise rights in either county. The Law Division, by order entered on October 29, 1990, dismissed their complaint and discharged the order to show cause. We reverse.
Article 2, ¶ 3(a) of the New Jersey Constitution of 1947 prescribes qualifications for voting. The franchise is accorded to every citizen of the United States of the age of 18 years or older "who shall have been a resident of this State and of the county in which he claims his vote 30 days, next before the election ..." An exception is made in the case of election of President and Vice President of the United States: article 2, ¶ 3(c) provides that a person registered in any election district who has moved to another state or county after the time required for establishing a voting residence in the new place of residence may vote for these two offices by special absentee ballot cast in the county of the former residence. Defendants contend that the effect of the constitutional provision, except for presidential elections, is to disenfranchise absolutely otherwise qualified and registered residents of this State simply because they move from one county to another during the thirty-day pre-election period.
We agree with plaintiffs' argument that imposition of this durational requirement on qualified and registered voters and the consequent disenfranchisement of such persons would constitute a violation of the equal protection guarantees of the fourteenth amendment. We conclude not only that a state constitutional scheme so providing would violate federal constitutional mandate but furthermore that New Jersey's constitutional provision need not and should not be read to effect disenfranchisement in this situation.
We premise our holding upon the fundamental precept that "the exercise of the basic right of suffrage, a civil and political franchise ... [is] of the very essence of our democratic *232 process." Gangemi v. Berry, 25 N.J. 1, 12, 134 A.2d 1 (1957). As Justice Francis noted in Asbury Park Press, Inc. v. Woolley, 33 N.J. 1, 11, 161 A.2d 705 (1960), "No man can boast of a higher privilege than the right granted to the citizens of our State and Nation of equal suffrage and thereby to equal representation in the making of the laws of the land." Because the right to vote is the bedrock upon which the entire structure of our system of government rests, our jurisprudence is steadfastly committed to the principle that election laws must be liberally construed to effectuate the overriding public policy in favor of the enfranchisement of voters. See, e.g., In re Atlantic County Bd. of Elections, 117 N.J. Super. 244, 284 A.2d 368 (App.Div. 1971); In re Ross Petitions, 116 N.J. Super. 178, 281 A.2d 393 (App.Div. 1971); Pritel v. Burris, 94 N.J. Super. 485, 229 A.2d 257 (App.Div. 1967); Lebak v. Freck, 212 N.J. Super. 234, 514 A.2d 856 (Law Div. 1986); In re 1984 Maple Shade General Election, 203 N.J. Super. 563, 497 A.2d 577 (Law Div. 1985); Mays v. Penza, 179 N.J. Super. 185, 430 A.2d 1145 (Law Div. 1981). This canon of construction is indeed so critical to the preservation of our democratic institutions that it has been applied to the state constitution itself. Gangemi v. Berry, supra. We point out too that the evolution of the organic law of this State has taken an undeviating path towards liberalization of the voting right. Thus, for example, art. 2, ¶ 3, sec. (a) was amended in 1957, 1963 and 1974 gradually to reduce the durational requirement from its original stipulation of a one-year state residency and a six-month county residency to the current stipulation of 30 days for each. Civilian absentee balloting was provided for by L. 1953, c. 211, codified as N.J.S.A. 19:57-1 to -40; the Presidential Ballot Law was added by L. 1964, c. 134, codified as N.J.S.A. 19:58-1 to -33; and the Overseas Residents Federal Election Absentee Voting Law, mandated by 42 U.S.C.A. § 1973ff was adopted by L. 1976, c. 23, codified as N.J.S.A. 19:59-1 to -13.
We regard the complex of relevant legislative enactments as instructive in our effort to construe art. 2, ¶ 3(a). Not only has *233 the right to vote been legislatively extended by the cited statutes but perhaps even more significantly, the Legislature has expressly protected the franchise rights of qualified and registered voters who move from one residence to another in the same county within the 30-day period prior to the election. Thus N.J.S.A. 19:31-11(b) permits such a voter to vote in the election district from which he has moved upon signing an affidavit setting forth the date of the move and the old and new address.[1] Thus voters moving from one municipality to another within the same county, even if to a different federal congressional district or state legislative district, are accorded the right to return to their original election districts to enter the voting booth there, and to vote the entire ballot. The question before us then is plain. Does the State Constitution withhold that same right from a voter who moves to a different county but who might, as plaintiffs here, remain in the same congressional district and perhaps even the same legislative district?
Our negative answer is based on the enormity of the disparity in treatment between a voter who moves inter-county and one who moves intra-county as weighed against the lessening interest in preserving the county as a political unit despite its continued significance as an administrative unit.[2] That is to say, we recognize that the general scheme of the election law is to repose responsibility for its general administration, the registration of voters, and the conduct of elections in county officials. See generally N.J.S.A. 19:6-17 to 25. We also recognize the significance of the 30-day per-election period as the time *234 within which the election records under the county's control and supervision are frozen  that is, no voter pages may be added or removed during that time. N.J.S.A. 19:31-1, et seq. It is, of course, the 30-day closing of the books and the consequent lack of opportunity to register in the new election district which underlies the franchise protection for the voter who moves within the county.
But we fail to perceive how these considerations can justify disenfranchisement of a voter who, within the 30-day period, moves from, for example, Secaucus in Hudson County to the adjacent municipality of East Rutherford in Bergen County while at the same time protecting the franchise of a voter who moves from East Rutherford in Bergen County across congressional and legislative district lines to, for example, Mahwah, many miles away but still in Bergen County. We see no greater opportunity for fraudulent conduct or greater threat to the integrity of the election process in one case than in the other and no appreciable difference in the administrative burden in permitting the voter to vote at the original election district on affidavit. The interest, expectation and fundamental rights of these two hypothetical voters is, however, identical. Nor are we able to perceive a justification for disenfranchising the person who moves from county to county but never leaves the State while at the same time according the franchise to persons living abroad who may not have actually resided in this State for many years. See N.J.S.A. 19:59-1, et seq.
We cannot assume that our State Constitution, construed in the light of these political, constitutional and legislative developments, requires such a disenfranchisement. We are satisfied that it does not in express terms do so. We believe, rather that the key provision of art. 2, ¶ 3(a) is residency in "the county in which he claims his vote." In our view the requirement of 30 days residency in that county "next before the election" refers to the initial right to obtain permanent registration as a voter pursuant to N.J.S.A. 19:31-1.1 and 19:31-5. If a *235 permanently registered voter moves within the State after the books are closed and after he is therefore able to change his registration, we do not believe a fair reading of the constitution precludes his right to "claim his vote" in the county of his permanent registration in which he resided up until the closing of the books, provided, of course, that he continues to reside within the State. In sum, the State Constitution speaks to enfranchisement, not disenfranchisement. Any other construction, in our view, is unacceptably draconian.
We also conclude that any other construction would place the state constitution on a collision course with the United States Constitution. We base this conclusion on Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). We read Dunn as drawing a clear distinction between a bona fide residence requirement imposed by a State and a durational residence requirement. As the Supreme Court held in Dunn, 405 U.S. at 343-344, 92 S.Ct. at 1003-1004, "an appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny." However, as the Court went on to explain, "durational residence requirements, representing a separate voting qualification imposed on bona fide residents, must be separately tested by the stringent standard." Ibid. (Emphasis the Court's.) That stringent standard requires the State to demonstrate a compelling state reason for the imposition of the durational-residence burden on the right of franchise. We have no doubt that the 30-day durational requirement for bona fide state residents readily meets the requisite stringent standard. Obviously the proper conduct of elections requires time for all of the mechanical procedures to take place, including the voter's registration and the insertion of his voter page in the election books before administrative necessity requires their closing. See Marston v. Lewis, 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973). For these purposes the relatively brief and co-extensive county durational requirement simply implements *236 the State durational requirement. They are really one and the same. We do not, however, perceive any similar compelling State interest justifying an additional, new, and independent 30-day county resident requirement for a state resident who simply moves to a different county from the one in which he is already residing, in which he is permanently registered, and in whose election books he already has his page. A voter who moves can certainly be required to re-register whether he moves within or without the same county. But he cannot be required to re-register as a condition of continuing to exercise his franchise rights during that period of time in which registration is ineffective to secure those rights. And only the inter-county, not the intra-county, mover is so burdened. Nor have defendants been able to suggest to us any compelling state interest justifying the disparity between an intra-county mover and an inter-county mover either in terms of the mechanics of conducting the election or in generally protecting the integrity of the election process.
We add this further observation. Our rationale requires that plaintiffs be permitted to return on election day to Franklin Township in Somerset County and to vote there in the same manner as provided by N.J.S.A. 19:31-11(b) as if they had moved to some other municipality in Somerset County rather than to a municipality in Mercer County. We appreciate that that is more than they requested. They sought the right to vote only for candidates and public questions common to their old and new election districts. We are, however, satisfied that there is no present mechanism, short of a proscribed voter-identifiable ballot, which could afford them a limited voting right. While an absentee ballot pursuant to N.J.S.A. 19:59-1, et seq. could preserve their right to vote for federal office, it would not preserve their equally important right to vote on statewide referenda. We are also convinced that the only practicably available alternative of affording them an unlimited voting right in their old election district does substantially less harm to the integrity of the election process than would result from *237 disenfranchising them altogether. As pointed out, a voter moving within the county may vote on affidavit in his old election district. That voter would be casting a ballot for some candidates whose names appear on the ballot in his new election district but also for some whose names do not. Thus, the choice of local municipal officials will inevitably be different. The choice of county freeholder candidates will inevitably be the same. United States President, Vice President, and Senator will also inevitably be the same. But depending on where congressional and state legislative lines have been drawn, even in the case of an intra-county move, the candidates for United States House of Representatives, State Senate, and State Assembly may be different. State and county public questions will be the same; municipal questions will be different. In the case of an inter-county move, the ballot disparity may not be significantly different, particularly where, as here, the two counties are contiguous. Thus the old and new places of residence may well share a common congressional district or legislative district or both. Consequently, the relevance of the ballot choices offered by the old district to the voter who has moved is not significantly different for the intra-county mover and the inter-county mover. If the intra-county voter does no violence to the proper conduct of the election by returning to his former election district, neither will the inter-county voter.
There is, however, an adequate rational distinction between the two categories of voters to warrant some relevant disparity in legislative treatment should the Legislature choose to impose it. Thus, for example, it may require a special absentee ballot for the 30-day inter-county voter. It may also choose to permit that voter to vote in his new election district. It may, in short, take any appropriate action in respect of that category of voters which is consistent with protecting the integrity of the election and the reasonable administration of the process. It may not, however, disenfranchise them altogether.
The order appealed from is reversed, and we remand to the trial court for entry of an order consistent herewith.
NOTES
[1] A voter moving within the same election district is accorded the right by statute to continue to vote there registered under the original address for two years after the move.
[2] We think it plain that the one person-one vote rule embodied by art. 4, sec. 3, ¶ 1, adopted 1966, in compliance with the mandate of Jackman v. Bodine, 43 N.J. 453, 205 A.2d 713 (1964), and the consequent replacement of the single-county senator and the county-wide election of assemblymen by a division of the State into legislative districts, some of which cross county lines, reduced the political significance of the county structure.