701 A.2d 925

BOROUGH OF NORTH HALEDON, PASSAIC COUNTY, PETITION-ER–APPELLANT, v. BOARD OF EDUCATION OF THE MAN-CHESTER REGIONAL HIGH SCHOOL DISTRICT, PASSAIC COUNTY, RESPONDENT–RESPONDENT, AND BOROUGH OF HALEDON, PASSAIC COUNTY, BOROUGH OF PROSPECT PARK, PASSAIC COUNTY, AND STATE BOARD OF EDU-CATION, INTERVENORS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1997—Decided October 8, 1997.

Before Judges PETRELLA, SKILLMAN and WERTHEIMER.

*James V. Segreto* argued the cause for appellant Borough of North Haledon (*Segreto & Segreto*, attorneys; *James V. Segreto*, of counsel and on the brief).

*Stephen R. Fogarty* argued the cause for respondent Board of Education of the Manchester Regional High School District (*Fogarty & Hara*, attorneys; *Mr. Fogarty*, of counsel, *Kevin M. McEwen*, on the brief).

*George O. Foster*, Municipal Attorney, attorney for respondent Borough of Haledon, submitted a letter relying on the brief and appendix submitted by respondent Board of Education of the Manchester Regional High School District.

*Hook, Smith & Meyer*, attorneys for respondent Borough of Prospect Park, submitted a letter relying on the brief and appendix submitted by respondent Board of Education of the Manchester Regional High School District (*Gordon D. Meyer*, on the letter).

*Peter Verniero*, Attorney General, attorney for respondent State Board of Education (*Mary F. Rubinstein*, Deputy Attorney General, on the statement in lieu of brief).

The decision of the court was delivered by

PETRELLA, P.J.A.D.

The Board of Education of the Passaic County Manchester Regional High School District (Regional Board) concluded that a proposal to change the method of apportioning costs was defeated in the April 18, 1995 election because two of the three constituent municipalities comprising the regional school district failed to adopt it. The Borough of North Haledon's petition to challenge

the interpretation of the applicable statutes by the Regional Board was rejected by the Commissioner of Education (Commissioner), and the State Board of Education (State Board). North Haledon appeals from the final decision of the State Board that affirmed the determination of the Commissioner. The State Board held that, in order to change the method of apportioning costs among the constituent municipalities of a regional school district, a majority vote of those voting in each constituent municipality was required. We agree and affirm.

North Haledon argues that the language "total vote of the entire regional district" in *N.J.S.A.* 18A:13-5 applies and that a majority vote of the entire district is determinative (the overall majority rule). It argues that *N.J.S.A.* 18A:13-23 is not applicable as to what constitutes approval of the ballot question. North Haledon asserts that certain amendatory legislation should be construed in accordance with its precise language and the presumption against implied amendment. It relies on a liberal construction of election laws to effectuate an overriding public policy in favor of enfranchisement of voters.

Manchester Regional High School is in a limited purpose regional school district (*see N.J.S.A.* 18A:13-34(b)), and has as constituent municipalities the Boroughs of North Haledon, Haledon, and Prospect Park. An election was held in those municipalities on April 18, 1995 on the following question:

The Board of Education of the Manchester Regional High School District is hereby authorized, subject to the approval of the legal voters of the District, to modify the manner in which amounts to be raised for annual or special appropriations for the District, including the amounts to be raised for interest upon, and the redemption of, bonds payable by the district, are apportioned among the district's constituent municipalities so that, at the end of a five year phase-in period, the district will apportion its appropriations among its constituent municipalities based upon the number of pupils enrolled in the District from each municipality. The progression of change from the equalized valuation to the per pupil enrollment basis during each fiscal year of the five year phase-in period shall be as follows:

a. 1995–1996: Eighty percent (80%) equalized valuation and twenty percent (20%) pupil enrollment

b. 1996–1997: Sixty percent (60%) equalized valuation and forty percent (40%) pupil enrollment

c. 1997–1998: Forty percent (40%) equalized valuation and sixty percent (60%) pupil enrollment

d. 1998–1999: Twenty percent (20%) equalized valuation and eighty percent (80%) pupil enrollment

e. 1999–2000: One Hundred percent (100%) pupil enrollment

## EXPLANATION

Approval of this proposal would allow the Manchester Regional High School District Board of Education to change the method it uses to apportion the financial contributions of its constituent municipalities from proportions based solely on the equalized valuation of each municipality to proportions based solely on pupil enrollment. The change would take place on a graduated basis over a five year period so that beginning in the fifth year (1999-2000 school year) and for all subsequent years, each municipality's share of financial contribution to the regional school district will be on the basis of its pupil enrollment in the district.

After the election, each municipality was recorded as having had the following votes:

|  | YES | NO |
|---|---|---|
| North Haledon | 1,601 | 110 |
| Haledon | 114 | 337 |
| Prospect Park | 41 | 467 |
| TOTAL | 1,756 | 914 |

The Regional Board, as well as the intervening municipalities of Haledon and Prospect Park, took the position that the ballot question failed because it had been defeated in two of the three constituent municipalities. North Haledon contended that the question passed because a majority of the total votes cast in the election were in favor of adoption of the question.

The original method of apportioning costs in the district was on a per pupil basis pursuant to *N.J.S.A.* 18A:13–23 (*L.* 1967, *c.* 271, § 18A:13–23 (current version at *N.J.S.A.* 18A:13–23)). However, as a result of a 1975 amendment to *N.J.S.A.* 18A:13–23 (*L.* 1975, *c.* 212, § 29), this method was changed to a ratables basis.[1]

---

[1] A regional district's appropriations were required by the 1975 amendment to *N.J.S.A.* 18A:13–23 to

Under the proposed ballot question, North Haledon's apportionment would return to a per pupil basis by the end of a five year phase-in period as permitted by a 1993 amendment to *N.J.S.A.* 18A:13-23 (*L.* 1993, *c.* 67, § 1). North Haledon sought to return to the per pupil basis apparently because demographic data indicates that it was paying almost 51% of the taxes for the regional school district, but that it had the least number of pupils (slightly more than 28% of the total) attending Manchester Regional High School of the three municipalities.[2] North Haledon pays the largest levy per pupil on an equalized valuation basis. On a per pupil basis for the same period, North Haledon's share of the cost would decrease, and the cost for the other two constituent municipalities would increase.

## I.

A hearing was held after the election before an administrative law judge (ALJ) who rejected North Haledon's claim that the "overall majority" rule of *N.J.S.A.* 18A:13-5 applied. The ALJ concluded that in accordance with his interpretation of *N.J.S.A.*

---

be apportioned among the municipalities included within the regional district upon the basis of the portion of each municipality's equalized valuation allocated to the regional district, calculated as described in the definition of equalized valuation in [*N.J.S.A.* 18A:7A-3 (repealed 1990); revised equalized valuation definition now appears at *N.J.S.A.* 18A:7F-3].

[2] According to North Haledon, as of the year before the election, the effect of the apportionment of taxes in the regional district based on the respective value of ratables in the boroughs was:

|  | Population | Pupils | Percentage of Pupils | Apportionment of Taxes | Levy Per Pupil |
|---|---|---|---|---|---|
| North Haledon | 7,987 | 182 | 28.35 | 50.86 | $12,714 |
| Haledon | 6,951 | 247 | 38.47 | 30.99 | $ 5,708 |
| Prospect Park | 5,053 | 213 | 33.18 | 18.14 | $ 3,875 |

The Regional Board disputed some of the figures presented by North Haledon. The differences are insignificant and do not affect the thrust of North Haledon's argument or our decision.

18A:13–23, the proposal was not approved where it was rejected by the voters in two of the three constituent municipalities. The Commissioner and the State Board agreed with the ALJ's decision.

The issue of apportionment of costs for regional school districts in this State has evolved over the years and epitomizes a long-standing public policy struggle in the Legislature as to the funding approach considered most "fair," *i.e.*, whether to require higher payments from those districts or municipalities considered most able to afford it based on property values, or from those districts or municipalities with higher pupil populations who use the services more. It is not our function to resolve that policy debate or comment on the wisdom of the legislative scheme of cost shifting or allocation. Rather, our sole function is to resolve the dispute in the interpretation of the applicable statutes.

The Public School Education Act of 1975, which amended *N.J.S.A.* 18A:13–23, provided in section 29 for budget allocations for members of regional school districts to be apportioned according to the equalized valuations or ratables in the member communities. We characterized the enactment of that law as representing "a radical departure from the prior method of apportionment of costs upon the basis of per pupil enrollment undertaken by many municipal members of the regional school districts." *Township of Princeton v. New Jersey Dep't of Educ.*, 163 *N.J.Super.* 389, 393, 394 *A.*2d 1240 (App.Div.1978).

*N.J.S.A.* 18A:13–23.1 (repealed in 1990) was enacted the very next year, 1976, to allow any regional school district which had been allocating its costs on a per pupil basis to phase in its compliance with the new equalized valuation basis. Under that statute, the percentage of the allocation based on the per pupil basis decreased over a five year period, and the percentage based on the equalized valuation basis increased until, in the school year 1980–1981, the equalized valuation basis was required to be the exclusive method of apportioning the costs among the municipalities. A constitutional challenge to that statute was rejected in

*Township of Princeton v. New Jersey Dep't of Educ., supra,* 163 *N.J.Super.* 389, 394 *A.*2d 1240.

The Legislature returned to the cost allocation issue by adopting *L.* 1993, *c.* 67, further amending *N.J.S.A.* 18A:13–23, to provide voters with a choice of basing the apportionment of their regional district's costs on an equalized valuation basis, on a per pupil basis, or on any combination of the two.[3] This appeal involves the issue of the correct method to determine whether the question was approved under that statute.

North Haledon argues that, notwithstanding the fact that the voters in the other two constituent municipalities rejected the proposal, the overall number of voters in favor of the proposal exceeded the overall number of voters against the proposal and this "overall majority" means that the proposition carried pursuant to *N.J.S.A.* 18A:13–5. That statute provides:

Elections in regional districts shall be conducted as in other local districts except that in any such elections, *unless otherwise provided by this Title,* the total vote of the entire regional district, without regard to the territorial boundaries of the constituent districts, shall be counted in determining the result of the election.

In any case in which a proposal for the creation of a regional district or for the enlargement of a regional district is submitted, such proposal shall be adopted only if a majority of the votes cast thereon

a. In each of the local districts, other than a consolidated district, proposing to form the regional district,

---

[3] The 1993 legislation also limited an established regional district to modifying its apportionment method upon the occurrence of one of five events: (1) the end of the ten year period since the apportionment was last approved by the voters; (2) a change by more than 10% of the ratio of the equalized valuation of any constituent municipality to the total equalized valuations of the district since the last apportionment approved by the voters; (3) a change by more than 10% of the ratio of the pupil population of any constituent municipality to the total pupil population of the district since the last voter approved apportionment; (4) one or more districts join the regional district; or (5) the regional district was created before March 8, 1993 (the effective date of the amendatory act), and had never revised its cost apportionment. *L.* 1993, *c.* 67, § 5. (*N.J.S.A.* 18A:13–23.3). The 1993 statute also required the Department of Education to provide an impact assessment of the apportionment method to the Regional District Board of Education proposing to modify its method of apportionment. *See N.J.S.A.* 18A:13–34.2.

b. In the consolidated district proposing to form the regional district without regard to the territorial boundaries of the constituent districts, or

c. In the regional district to be enlarged, and in each district proposed to enlarge it,

shall be cast in favor of the adoption of such proposal.

[Emphasis supplied].

North Haledon further argues that *N.J.S.A.* 18A:13–23, on which the Regional Board, the Commissioner and the State Board all relied, is not determinative of this issue. That statute provides:

The annual or special appropriations for regional districts, including the amounts to be raised for interest upon, and the redemption of, bonds payable by the district, shall be apportioned among the municipalities included within the regional district, *as may be approved by the voters of each municipality* at the annual school election or a special school election, upon the basis of:

a. the portion of each municipality's equalized valuation allocated to the regional district, calculated as described in the definition of equalized valuation in section 3 of P.L.1996, c. 138 (C. 18A:7F–3);

b. the proportional number of pupils enrolled from each municipality on the 15th day of October of the prebudget year in the same manner as would apply if each municipality comprised separate constituent school districts; or

c. any combination of apportionment based upon equalized valuations pursuant to subsection a. of this section or pupil enrollments pursuant to subsection b. of this section.

[ (*N.J.S.A.* 18A:13–23) (Emphasis supplied) ].

## II.

■ Although we are not bound by an agency's interpretation of a statute, the agency's application of its governing statutes are given "considerable weight" so long as the interpretation is reasonably debatable. *In re Musick,* 143 *N.J.* 206, 217, 670 *A.2d* 11 (1996); *Francey v. Board of Educ.,* 286 *N.J.Super.* 354, 357, 669 *A.2d* 282 (App.Div.1996); *see also Lammers v. Board of Educ.,* 134 *N.J.* 264, 274, 633 *A.2d* 526 (1993) (agency determination in its interpretation of statute "deserves a high degree of deference").

■ *N.J.S.A.* 18A:13–23 requires that apportionment among municipalities within the regional district be approved "by the voters of each municipality." This language is reconciled with the overall majority rule of the more general statute, *N.J.S.A.* 18A:13–

5, because the latter section specifically applies "unless otherwise provided by this Title." Because *N.J.S.A.* 18A:13–23 provides "otherwise," by requiring approval by the voters of each municipality, the general rule of overall majority does not apply. Such a construction is consistent with the maxim of statutory construction that statutes should be considered *in pari materia,* *i.e.,* that statutes dealing with the same subject matter ought to be construed together "as a unitary and harmonious whole," even if some are special and some are general, so that each may be fully effective. *Clifton v. Passaic County Bd. of Taxation,* 28 *N.J.* 411, 421, 147 *A.*2d 1 (1958).

■ North Haledon contends that where the Legislature has created exceptions from the overall majority rule of *N.J.S.A.* 18A:13–5, it has done so expressly by adding the exception in the amendment. It asserts that the absence of such an amendment indicates the Legislature must not have intended to create such an exception here.[4] However, such an amendment is not required by the statutory language "unless otherwise provided by this Title." Had the statute instead recited "unless otherwise provided by this section," the result might be different. The language of *N.J.S.A.* 18A:13–5 provides ample notice that statutory provisions elsewhere in the Title will override the general rule.

Moreover, the Legislature in *N.J.S.A.* 18A:13–72 enacted an exception to the overall majority rule of *N.J.S.A.* 18A:13–5 without including the exception in the text of that statute. Thus, in *N.J.S.A.* 18A:13–72, which addresses the means by which a municipality may withdraw from participation in an all purpose regional district, the ballot question is to be submitted "to the legal voters

---

[4] Legislative inaction has been called a "weak reed upon which to lean" and a "poor beacon to follow" in construing a statute. *G.E. Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 625 *A.*2d 468 (1993); *Masse v. Bd. of Trustees,* 87 *N.J.* 252, 432 *A.*2d 1339 (1981). The maxim "Expressio unius est exclusio alterius" is inapplicable where the listed exceptions were obviously not meant to be the only exceptions. *State v. Raymond M.,* 188 *N.J.Super.* 533, 536, 457 *A.*2d 1237 (Law Div.1982).

of the withdrawing municipality and to the legal voters within the remainder of the all purpose regional district." The committee statement accompanying the bill which became this law recited:

... the question would then be placed before the voters in the municipality proposing to withdraw and before the voters of the other municipalities which comprise the district. *An affirmative vote in each of these elections is necessary for the withdrawal to become effective.*

[*Senate Education Committee Statement to L.1989, c. 90,* at *N.J.S.A.* 18A:13–66; emphasis added].

Thus, both the language of *N.J.S.A.* 18A:13–5 itself and the Legislature's subsequent enactment undermine North Haledon's argument that all exceptions to the overall majority rule must be listed in the body of *N.J.S.A.* 18A:13–5.

In *In re the Special Election Held in the Northern Burlington County Reg'l Sch. Dist.,* 94 *N.J.A.R.*2d (EDU) 385, 387, 1994 *WL* 463473 *dismissed,* State Bd. of Educ. (Oct. 5, 1995), the Commissioner rejected the argument that exclusions must be included in *N.J.S.A.* 18A:13–5, referring to other statutes governing regional districts to support that conclusion. North Haledon points out that two of those statutes, *N.J.S.A.* 18A:13–28 and *N.J.S.A.* 18A:13–33, are arguably closely related to the exceptions listed in *N.J.S.A.* 18A:13–5. However, as to the third example, *N.J.S.A.* 18A:13–57 through –59, North Haledon erroneously concludes that the overall majority rule still applies. The 1993 amendment to those provisions makes clear that this is another exception to *N.J.S.A.* 18A:13–5. *N.J.S.A.* 18A:13–59 provides by virtue of the 1993 amendment:

For withdrawal from a regional district, the question shall be deemed adopted if it receives an affirmative vote of a majority of the votes cast within the withdrawing constituent district and it receives an affirmative vote of a majority of the overall votes cast in the entire regional district. For dissolution of a regional district, the question shall be deemed adopted if it receives an affirmative vote in a majority of the individual constituent districts and it receives an affirmative vote of a majority of the overall votes cast in the entire regional district.

Thus, there can be no doubt that the Legislature has provided for votes to be counted on other than the overall majority method without it being specifically included in *N.J.S.A.* 18A:13–5.

North Haledon asserts that the very purpose of amending *N.J.S.A.* 18A:13–23 by way of *L.* 1993, *c.* 67, was to encourage formation of regional school districts, and that this policy is frustrated by the State Board's decision, which is a disincentive to regionalization. In this vein North Haledon refers to language in the statement accompanying the Assembly Substitute for Assembly Bills Nos. 1822 and 1063 of 1992, and the Senate Education Committee Statement on that substitute bill, which noted that the current apportionment structure based on property tax ratables "acts as a disincentive to regionalization for districts which have high property values and a small pupil population when they consider joining with a municipality which has low property values and a large pupil population."

As originally proposed, *L.* 1993, *c.* 67, addressed only apportionment of costs upon formation of a regional school district, and not the change of such apportionments for existing districts. *See Northern Burlington, supra,* 94 *N.J.A.R.*2d (EDU) at 388. Senate Education Committee amendments added the provisions that allowed existing regional districts to change their apportionment methods. *See* Second Reprint, Assembly Substitute for Assembly Bill Nos. 1822 and 1063 (1992). The amendments deleted the bills' references to elections "held pursuant to *N.J.S.A.* 18A:13–34" since that section deals only with formation of regional districts. As finally enacted, the bill continued to include the language "as may be approved by the voters of each municipality." This structure is similar to the "each municipality" requirement of *N.J.S.A.* 18A:13–35, which applies to votes cast to form a new regional district.

Other amendments to the bill were consistent with requiring majority votes of "each municipality." As the Commissioner stated in *Northern Burlington, supra,* 94 *N.J.A.R.*2d (EDU) at 388:

This serves as yet another indication of the Legislature's view that a change in cost apportionment reaches to the regional district's fundamental nature, a question akin to formation or enlargement rather than budget approval or other "purely financial" matters as argued by proponents herein. So, too, does the Legislature's

strict limitation [in *N.J.S.A.* 18A:13–23.3] of the circumstances under which the question of a change in apportionment can even reach the point of being proposed to voters, a restriction adopted in the interest of stability and assurance to members who vote [sic] join or form a regional district in reliance on a particular method of cost apportionment.

## III.

North Haledon's argument for liberal construction of election laws in favor of enfranchising the voters relies on cases that generally involve technical questions of eligibility of voters and ballots or nominating petitions. *See In re Municipal Election Held on May 10, 1994,* 139 *N.J.* 553, 656 *A.*2d 5 (1995) (validity of ballots where punch card holes not punched out); *Afran v. County of Somerset,* 244 *N.J.Super.* 229, 581 *A.*2d 1359 (App.Div.1990) (whether voters who changed residence within thirty days of election should be allowed to vote in that election); and *In re Ross Petition,* 116 *N.J.Super.* 178, 281 *A.*2d 393 (App.Div.1971) (validity of certain signatures on nominating petition). None of the cases cited involve North Haledon's type of claim of disenfranchisement. Essentially, North Haledon is arguing that its voters are disenfranchised if they are unable to impose the means of apportionment most advantageous to it on the other constituent municipalities. This argument cuts both ways. If the State Board's decision were reversed, and an overall majority rule would determine the means of apportionment, then the municipality with the largest number of eligible voters could always choose the apportionment method most advantageous to it, thereby similarly "disenfranchising" the smaller municipalities.

North Haledon's additional arguments are rejected as without merit. We add only the comment that North Haledon's reliance on certain repealed statutes, *N.J.S.A.* 18A:14–1 *et seq.,* and specifically *N.J.S.A.* 18A:14–58,[5] is unavailing. Moreover, North Haledon's argument that the fact that the Regional Board in the

---

[5] These statutes were replaced in part by *N.J.S.A.* 19:60–1 *et seq..* There is no replacement to the repealed *N.J.S.A.* 18A:14–58.

proposal submitted to the voters indicated in somewhat overbroad language that it was "subject to the approval of the Legal Voters of the District," is unavailing. The law cannot be changed by the use of language in the ballot question.

■ Respondent's brief had requested summary disposition and sought attorney's fees and costs claiming that the case was frivolous. *See N.J.S.A.* 2A:15–59.1. Under the circumstances, we conclude that relief under that statute is not appropriate. *See Iannone v. McHale,* 245 *N.J.Super.* 17, 28, 583 *A.*2d 770 (App.Div. 1990). The statutes involved in this case had not previously been construed in this context by an appellate court, and North Haledon's argument that one statutory rule applied instead of another is not untenable, even though upon analysis it may not have been correct.

Affirmed.