JOSEPH F. HALL, PLAINTIFF–APPELLANT, v. MAYOR AND DI-
RECTOR OF PUBLIC SAFETY IN THE TOWNSHIP OF PENN-
SAUKEN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF
PENNSAUKEN AND CHIEF OF POLICE OF THE TOWNSHIP
OF PENNSAUKEN, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 14, 1980—Decided November 3, 1980.

230

Before Judges BISCHOFF, MILMED and FRANCIS.

*Isaiah Steinberg* argued the cause for appellant (*Steinberg, Steinberg & Ginsberg*, attorneys).

*Mario A. Iavicoli* argued the cause for respondents.

The opinion of the court was delivered by

FRANCIS, J. A. D.

Appellant Joseph F. Hall (Hall) appeals from an order which dismissed his complaint in lieu of prerogative writs. The instant action was brought by Hall to contest a five–day suspension from his duties as a police officer in the Pennsauken Police Department. After a departmental hearing Hall was found guilty of violating the following provisions of the Department's rules and regulations:

Article I–Conduct unbecoming an officer.

.   .   .   .   .   .   .   .

Section 10–Publicly criticizing the official action of a superior officer.

The facts underlying the finding of guilt are essentially undisputed. In August 1977 Nicholas J. Petitte, the Pennsauken Township Police Chief, brought a suit to compel the Camden County Welfare Board to disclose whether any police officer from the Pennsauken Police Department had applied for welfare assistance. Shortly thereafter a newspaper reporter telephoned Hall. Hall was out of town attending a convention and received the call during the early hours of the morning while in bed. The reporter told Hall about Petitte's lawsuit, apparently soliciting comment from Hall. Hall told the reporter that in 1974 four or five police officers who had large families had applied for food stamps because they could not get along on their salaries. Hall made a statement which resulted in the following publication:

Hall charged the suit was filed by Petitte in retaliation for a complaint Hall filed with the State Public Employees Relations Commission after he allegedly was bypassed for a promotion. The complaint is pending. . . .

At the departmental hearing Hall admitted that the newspaper had accurately reported his statement. A three–man disciplinary board found that Hall's statement constituted public criticism of a superior officer and that the remark was detrimental to the proper functioning of the department and to its public image. The suspension and subsequent action in lieu of prerogative writs followed.

Hall argues that his statement to the reporter concerning Chief Petitte's lawsuit was speech protected under the First and Fourteenth Amendments and that, in any case, Art. I, § 10 of the rules and regulations is invalid because it is facially overbroad and thus exerts a chilling effect on the exercise of protected speech.

*Pickering v. Board of Education*, 391 *U.S.* 563, 88 *S.Ct.* 1731, 20 *L.Ed.*2d 811 (1968), involves the degree to which the speech of public employees may be constitutionally regulated within the bounds of the First and Fourteenth Amendments. In *Pickering* the court held that a school teacher could not be dismissed for making erroneous public statements upon issues which were current subjects of public attention, "absent proof of false statements knowingly or recklessly made by him . . . ." (footnote omitted), *Id.* 391 *U.S.* at 574, 88 *S.Ct.* at 1737, 20 *L.Ed.*2d at 821. The court, however, recognized that the right of public employees to speak on matters of public concern must be balanced against the interest of the state, as an employer, to promote efficiency in the public services it performs through its employees. *Id.* 391 *U.S.* at 568, 88 *S.Ct.* at 1734, 20 *L.Ed.*2d at 817. *See, also, Givhan v. Western Line Consolid. Sch. Dist.*, 439 *U.S.* 410, 414, 99 *S.Ct.* 693, 696, 58 *L.Ed.*2d 619, 624 (1979).

Thus certain legitimate state interests may limit a public employee's First Amendment right of speech. Some of these interests are: (1) the need to maintain discipline or harmony among co–workers; (2) the need for confidentiality; (3) the need to limit conduct which impedes the public employee's proper and competent performance of his duties, and (4) the need to encourage close and personal relationships between employees and their superiors. *Winston v. South Plainfield Bd. of Ed.*, 64 *N.J.* 582, 588 (1974); *see Williams v. Civil Service Comm'n*, 66 *N.J.* 152, 158 (1974); *Endress v. Brookdale Community College*, 144 *N.J.Super.* 109, 137 (App.Div.1976); *Pietrunti v. Brick Tp. Bd. of Ed.*, 128 *N.J.Super.* 149, 166 (App.Div.1974), certif. den. 65 *N.J.* 573 (1974), *cert.* den. 419 *U.S.* 1057, 95 *S.Ct.* 640, 42 *L.Ed.*2d 654 (1974).

■ It is clear that Hall's statement constituted public criticism of a superior officer under Art. I, § 10 of the rules and regulations. Moreover, we agree with the trial judge's finding that Hall's statement, which impugned Petitte's motivation for bringing the lawsuit, served to create disharmony in the department and thereby impeded its function. Consequently, if Art. I, § 10 is otherwise constitutionally valid, it is plain that Hall's speech fell within its reach and under the circumstances of this case was beyond the protection of the First and Fourteenth Amendments. Nevertheless, because Art. I, § 10 pertains solely to speech, Hall further contends that he has standing to assert the facial overbreadth of the regulation, even though his remarks under the circumstances may not be protected. *Broadrick v. Oklahoma*, 413 *U.S.* 601, 615, 93 *S.Ct.* 2908, 37 *L.Ed.*2d 830 (1973).

■ Again the court, in *Pickering v. Board of Education, supra*, recognized that a public employee has the right to speak on matters of public importance but that speech which hinders the performance of his duties and the operations of his employer may be regulated. *See Janusaitis v. Middlebury Volunteer Fire, etc.*, 607 *F.*2d 17, 26 (2 Cir. 1979); *Kannisto v. City and County of San Francisco*, 541 *F.*2d 841, 843–844 (9 Cir. 1976), *cert.* den. 430 *U.S.* 931, 97 *S.Ct.* 1552, 51 *L.Ed.*2d 775 (1977). The regulation in the present case, however, sweeps too broadly in prohibiting all speech which publicly criticizes the actions of a superior officer, even though the speech may relate to matters of public concern and does not adversely affect the functioning of the department. *Davis v. Williams*, 598 *F.*2d 916, 921–922 (5 Cir. 1979); *Gasparinetti v. Kerr*, 568 *F.*2d 311, 316–318 (3 Cir. 1977), *cert.* den. 436 *U.S.* 903, 98 *S.Ct.* 2232, 56 *L.Ed.*2d 401 (1978); *Muller v. Conlisk*, 429 *F.*2d 901, 904 (7 Cir. 1970).

The court in *Broadrick*, speaking of facial overbreadth adjudications concerning "pure speech," stated:

... [i]n such cases, it has been the judgment of this Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived

234

grievances left to fester because of the possible inhibitory effects of overly broad statutes. [413 *U.S.* at 612, 93 *S.Ct.* at 2915, 34 *L.Ed.*2d at 840]

Consequently, we hold that Art. I, § 10 is unconstitutional because it may be used to punish speech which is protected under the First and Fourteenth Amendments.

Accordingly, we reverse the order which dismissed plaintiff's complaint and vacate the suspension imposed at the departmental hearing.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.