**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2366-23

MARCELLUS ALLEN,

     Plaintiff-Appellant,

v.

CITY OF NEWARK, and
JOSEPH A. MCCALLUM,
JR., individually and in his
official capacity,

     Defendants-Respondents.

_____

Argued March 24, 2025 – Decided April 11, 2025

Before Judges Sabatino, Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0273-20.

Tracey S. Cosby (Tracey S. Cosby, PC) argued the cause for appellant.

Marc D. Haefner argued the cause for respondents (Walsh Pizzi O'Reilly Falanga LLP, attorneys; Marc D. Haefner, Gerhard W. Buehning, and Fabian N. Marriott, on the brief).

PER CURIAM

Plaintiff Marcellus Allen appeals the trial court's decision granting defendants' motion for summary judgment. Plaintiff was formerly employed as an Aide Level I for defendant Councilman Joseph A. McCallum, Jr. in the West Ward of the City of Newark until he was terminated on January 12, 2018. Plaintiff sued defendants in a four-count complaint alleging his termination was wrongful, amounted to a breach of contract, and violated his right to free speech. Plaintiff also alleged McCallum improperly cast him in a false light by calling him a "thug" after his termination, allegedly referring to plaintiff's past criminal history.

Prior to his termination, plaintiff had sought petitions from West Ward constituents in a bid to challenge McCallum in an upcoming election. Plaintiff argues this entitled him to the protections afforded by Newark Executive Order MEO-08-0001 ("Executive Order"), which provides any individual "certified as a candidate for municipal elective office in the City of Newark or for county elective office in the County of Essex shall be entitled to maintain their position with the City of Newark."

Additionally, plaintiff contends he was a union-represented employee protected by a collective bargaining agreement ("CBA") and claims his

A-2366-23

employment was terminable only "for cause" based on the CBA and his employee handbook. And he claims his termination violated his constitutional first amendment right to speak freely. The trial judge granted defendants' motion for summary judgment dismissing all four counts.

We conclude the Executive Order did not apply to plaintiff as he was not a "certified" candidate prior to being terminated. However, we reverse the trial court's dismissal of counts one and two, which allege wrongful termination and breach of contract respectively, because a genuine issue of material fact exists as to whether plaintiff was an employee terminable at will, or an employee subject to the CBA and terminable only for cause. Also, plaintiff alleges his free speech rights were violated in a stand-alone count -- count three – and he is entitled to monetary relief from the City of Newark, although his allegations are tied to his wrongful termination count. The trial court failed to make any findings of fact or conclusions of law with respect to count three, constraining us to reinstate count three for an evaluation of whether plaintiff's free speech rights were violated by his termination.

Finally, plaintiff's false light claim was properly dismissed as it was time-barred by the relevant statute of limitations, and his alternative argument, applying a two-year statute of limitations is unavailing.

# I.

Plaintiff was employed as an Aide Level I for McCallum in the West Ward of Newark until his termination on January 12, 2018. Plaintiff's termination notice, in its entirety, reads as follows:

> Dear Mr. Allen:
>
> Please be advised as of January 12, 2018 your services, as an Aide to the Councilman will no longer be needed and will terminate at the close of business today. Thank you for your services to the City and I wish you well in your future endeavors.
>
> Sincerely,
>
> Joseph A. McCallum
> West Ward Councilman

Days before plaintiff was terminated, McCallum was informed plaintiff was seeking petitions for candidacy to run against him in an upcoming election. On January 30, 2018, over two weeks after his termination, plaintiff was notified he had insufficient petitions to have his candidacy certified. This notice informed plaintiff he had 206 accepted petitions but needed at least 307 accepted petitions to become certified. It was not until February 22, 2018, over a month after his termination, that plaintiff was notified he had met the threshold of 307 accepted petitions, and he was certified at that point to run for office in the City of Newark. Plaintiff filed a four-count complaint and demand for jury trial,

4

alleging: (1) wrongful termination ("count one");[1] (2) breach of contract and breach of the implied covenant of good faith and fair dealing ("count two"); (3) violation of Article I, Paragraphs 1 and 6 of the New Jersey Constitution, regarding freedom of speech ("count three"); and (4) casting plaintiff in a false light ("count four").

During discovery, plaintiff deposed the Assistant Business Administrator for the City of Newark, who also was the former Personnel Director for the City of Newark. She testified plaintiff's position was union-represented, and plaintiff's union was not notified of or involved in plaintiff's termination. Plaintiff also deposed McCallum, who testified he thought it was "ridiculous" plaintiff was running against him while still in his employ, and contended he terminated plaintiff for general insubordination and taking unauthorized vacations. McCallum also conceded a union was not involved when terminating plaintiff.

---

[1] Count one also alleges a violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -50. This portion of count one was dismissed on August 19, 2020. The order specifies "[a]ll claims and crossclaims other than the NJLAD claim are not dismissed." Accordingly, defendants' contention in their brief that only counts two, three, and four remain on appeal is incorrect. Moreover, at oral argument for summary judgment, defendants stated count one remained despite the August 19, 2020 order regarding the NJLAD allegation.

At the close of discovery, defendants moved for summary judgment. In the brief oral decision rendered, the trial court dismissed all counts, ruling the Executive Order did not apply to plaintiff, plaintiff improperly failed to exhaust the CBA's grievance procedures before seeking judicial relief, and plaintiff's false light claim was time-barred by a one-year statute of limitations. The trial court did not make any determinations as to the employee handbook's provisions nor did it make any findings of fact or conclusions of law with respect to plaintiff's free speech claim. This appeal followed.

II.

In considering these arguments, we review the trial court's grant of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether "the moving party [was] entitled to judgment as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 540 (1995); R. 4:46-2(c). Similarly, "[a]s we review a statute de novo, owing no deference to the trial court's interpretation, it follows that we will interpret the meaning of a valid executive order de novo." Talmadge Vill. LLC v. Wilson, 468 N.J. Super. 514, 517 (App. Div. 2021) (internal citation omitted).

6

A. Whether Plaintiff is Protected by the Executive Order.

We have likened valid executive orders as being "the equivalent of a statute enacted by the Legislature."  See ibid. (quoting 37 N.J. Practice, Administrative Law and Practice § 3.22 (Steven L. Lefelt, Anthony Miragliotta, & Patricia Prunty) (2d ed. 2000)).  When tasked with interpreting statutory language, we "aim[] to effectuate the Legislature's intent," and "[t]he 'best indicator' of legislative intent 'is the statutory language.'"  W.S. v. Hildreth, 252 N.J. 506, 518-19 (2023) (quoting State v. Lane, 251 N.J. 84, 94 (2022)).  Accordingly, "[i]f the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written."  Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013).  "'[O]nly when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with the general statutory scheme,' will we turn to extrinsic tools to determine legislative intent."  In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 325 (2024) (alteration in original) (quoting Shelton, 214 N.J. at 429).

In pertinent part, the Executive Order provides:  "Any municipal employee or appointee who is certified as a candidate for municipal elective office in the City of Newark or for county elective office in the County of Essex

7

shall be entitled to maintain their position with the City of Newark."  Newark, N.J., Exec. Order No. MEO-08-0001 (Sept. 23, 2008) (emphasis added).

Although plaintiff posits the Executive Order's plain language cannot be read in a vacuum, we must interpret the plain terms as written when they are unambiguous.  We move beyond the plain language only when it "is not clear or if it is susceptible to more than one possible meaning or interpretation."  Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009).  The Executive Order's plain language is clear and unambiguous.  It specifies the only individuals "entitled to maintain their position with the City of Newark" are those individuals who have been "certified as a candidate for municipal office in the City of Newark or for County elective office in the County of Essex."  Newark, N.J., Exec. Order No. MEO-08-0001 (Sept. 23, 2008) (emphasis added).  If the City of Newark had intended to include, in the universe of those protected by the Executive Order, those individuals who were seeking but who had not yet attained certification, it could have easily done so by removing the word "certified," yet it did not. DiProspero v. Penn, 183 N.J. 477, 493 (2005) ("Ordinarily, we are enjoined from presuming that the [drafters] intended a result different from the wording of the [codified provision] or from adding a qualification that has been omitted from the [provision]."); Murray v. Plainfield Rescue Squad, 210 N.J. 581, 596 (2012)

("We are charged with interpreting a statute; we have been given no commission to rewrite one."); <u>Mazzacano v. Est. of Kinnerman</u>, 197 N.J. 307, 323 (2009) ("We cannot, and should not, 'rewrite a plainly-written enactment of the . . . . or 'write in an additional qualification which the [drafters] pointedly omitted.'"(quoting <u>DiProspero</u>, 183 N.J. at 492)). Indeed, our Supreme Court, by analogy, has decreed if a statute's failure to provide for a specified scenario constitutes an oversight, "any corrective measure must be taken by the Legislature." <u>Murray</u>, 210 N.J. at 596.

Plaintiff's reliance upon <u>Lesniak v. Budzash</u>, 133 N.J. 1, 14 (1993), to support his claim that we cannot read the Executive Order "according to the strict letter," but must, instead, consider its text in the context in which it was written, is misplaced. Plaintiff's citation omits integral language preceding the selected language, where the court stated, "a codified provision[] is not to be given an <u>arbitrary construction</u>, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context." <u>Ibid.</u> (emphasis added). Because the Executive Order's plain language does not suggest such "arbitrary construction," warranting the need for extrinsic tools of interpretation, plaintiff's argument is unavailing. <u>Ibid.</u> The Executive Order

does not apply to plaintiff, and he cannot avail himself of its protection to support his wrongful termination claim.

B. Whether Plaintiff is an At-Will Employee.

Plaintiff also claims he was wrongfully terminated because he could only have been terminated for cause. "Absent a contract providing otherwise, employment in New Jersey is at-will," and "the employer may terminate an at-will employee for any reason, except for the few exceptions proscribed by law."[2] Lapidoth v. Telcordia Techs., Inc., 420 N.J. Super. 411, 420-21 (App. Div. 2011). However, an employment contract usurping the default at-will employee-employer relationship "may be formed by the existence of conditions, not only manifested by words, but also implied from the circumstances of employment." Troy v. Rutgers, 168 N.J. 354, 365 (2001). Such contracts may be evidenced by "[o]ral promises, representations, employee manuals, or the conduct of the parties, depending on the surrounding circumstances." Ibid. In contracting, the employer and employee may alter their default at-will

---

[2] See, e.g., N.J.S.A. 10:5-1 to -29.1 (prohibiting employment discrimination on the basis of race, national origin, age, marital status, sexual orientation, genetic information, pregnancy, sex, gender identity, or disability); Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 73 (1980) ("[E]mployers will know that unless they act contrary to public policy, they may discharge employees at will for any reason.").

A-2366-23

relationship and agree the employee will be terminated only for cause. Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 398 (1994). Such alteration may be present in a CBA, where an employer's relationship with its employees is governed by the CBA's terms and may restrict the employer to terminate only for cause. Ibid.

"An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both." Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980). A wrongful termination action in contract may be predicated upon the breach of an implied provision in an employer-employee agreement, cf. ibid., and such implied contract may be created by "[o]ral promises, representations, employee manuals, or the conduct of the parties," Troy, 168 N.J. at 365. In Woolley v. Hoffmann-La Roche, Inc., the Supreme Court held an employer's promise to terminate employees only for cause contained in an employee handbook, in the absence of disclaimers, may provide a basis for a breach-of-contract claim. 99 N.J. 284, 285-86, modified on other grounds, 101 N.J. 10 (1985).

Here, plaintiff alleges he was a dues-paying union member, the former Personnel Director testified at her deposition plaintiff was a union employee, and the record includes a document informing plaintiff of a "Change in

Bargaining Unit & Dues/Deductions" while he was in defendants' employ, and excerpts from an employee handbook. This evidence is sufficient to create a genuine issue of material fact as to whether plaintiff was a union-represented employee, and, if so, whether the employer had made a promise that the plaintiff could be terminated only for cause, or whether he was an at-will employee. It is undisputed the termination letter sent by defendants to plaintiff did not establish cause for termination. Defendants' later attempts to identify causes for termination does not negate that plaintiff was terminated without cause.

In light of the genuine issue of material fact present in the record, whether plaintiff was an employee terminable at will or an employee terminable only for cause, we reverse the trial court's order dismissing counts one and two, reinstate those counts, and remand the matter to the trial court in accordance with this decision.

C. Plaintiff's Free Speech Claim.

In count three of his complaint, plaintiff asserted the following:

> Terminating Mr. Allen because he sought elected office violated his State Constitutional Rights to speak freely and to write and publish his sentiments as a Citizen of the State of New Jersey and the United States of America. Defendant, City of Newark, sanctioned the misconduct of Joseph McCallum, as Respondeat Superior and quashed Plaintiff's ability to freely speech [sic] by depriving him of his ability to earn a living and remain employed by the very

employer who issued a memoranda [sic] encouraging elected public service.

Plaintiff did not set forth any specific comments that he made which would give rise to this claim. Plaintiff sought monetary damages from the defendant City of Newark, pursuant to a theory of respondeat superior.

Although inartfully pled, considering this claim in a light most favorable to plaintiff, as we must, plaintiff seemed to be asserting a tort claim for wrongful termination. In his merits brief, plaintiff asserts McCallum knew plaintiff was taking out petitions and intended to challenge him, and McCallum testified he thought it was "crazy" that someone who worked directly for him could also be actively campaigning against him to seek his position.

In Pickering v. Board of Education, 391 U.S. 563 (1968), the United States Supreme Court laid the foundation for the degree in which speech from public employees may be regulated without offending the First and Fourteenth Amendments. See Hall v. Mayor & Dir. of Pub. Safety, 176 N.J. Super. 229, 232 (App. Div. 1980) (discussing Pickering). In Pickering, which we have adopted in Hall, the Court "recognized that the right of public employees to speak on matters of public concern must be balanced against the interests of the state, as an employer, to promote efficiency in the public services it performs through its employees." Ibid.; see Lapolla v. County of Union, 449 N.J. Super.

13

288, 308 (App. Div. 2017) ("[W]hether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" (alterations in original) (quoting Borough of Duryea v. Guarnieri, 564 U.S. 379, 398 (2011))). Such state interests permitting a restriction of speech include: "(1) the need to maintain discipline or harmony among co-workers; (2) the need for confidentiality; (3) the need to limit conduct which impedes the public employee's proper and competent performance of his duties, and (4) the need to encourage close and personal relationships between employees and their superiors." Hall, 176 N.J. Super. at 232.

Plaintiff's actions in pursuing election to a public official he was employed to support amount to speech on matters of public concern, see Lesniak, 133 N.J. at 7, and the trial court was required to balance plaintiff's speech as a public employee with defendants' interests as a public employer, Hall, 176 N.J. Super. at 232 as plaintiff's run for public office implicated several factors highlighted in Hall. Ibid., see also Karins v. City of Atlantic City, 152 N.J. 532, 551 (1998).

Although the trial court discussed the parties' respective arguments with respect to plaintiff's free speech claim in its oral opinion, it did not make any findings of fact or conclusions of law. A trial court "shall, by opinion or memorandum decision, either written or oral, find the facts and state its

conclusions of law thereon in all actions tried without a jury . . . ."  R. 1:7-4(a).

When a trial court does not "articulate precise findings of fact and conclusions

of law" to explain its conclusions, the matter must be remanded.  See Ronan v.

Adely, 182 N.J. 103, 110-111 (2004); Curtis v. Finneran, 83 N.J. 563, 569-70

(1980) ("Failure to make explicit findings and clear statements of reasoning

'constitutes a disservice to the litigants, the attorneys, and the appellate court.'")

The trial court's failure to make factual findings and legal conclusions does not

afford us any meaningful opportunity to review its rulings on this claim,

requiring our reversal and remand.  Count three is reinstated.

D. Plaintiff's False Light Claim.

Our jurisprudence has recognized four distinct categories of invasion of

privacy torts.  Swan v. Boardwalk Regency Corp., 407 N.J. Super. 108, 118

(App. Div. 2009) ("[I]nvasion of privacy 'is not one tort, but a complex of four.'"

(quoting Rumbauskas v. Cantor, 138 N.J. 173, 179 (1994))).  These four

categories are:

> (1) intrusion (e.g. intrusion on plaintiff's physical
> solitude or seclusion, as by invading his or her home,
> illegally searching, eavesdropping, or prying into
> personal affairs); (2) public disclosure of private facts
> (e.g., making public private information about
> plaintiff); (3) placing plaintiff in a false light in the
> public eye (which need not be defamatory, but must be
> something that would be objectionable to the ordinary

15

reasonable person); and (4) appropriation, for the defendant's benefit, of the plaintiff's name or likeness.

[Id. at 119 (quoting Rumbauskas, 138 N.J. at 180).]

Each category of invasion of privacy has its own corresponding statute of limitations: (1) intrusion claims are subject to a two-year statute of limitations; (2) public disclosure of private facts claims are subject to a two-year statute of limitations; (3) false light claims are subject to a one-year statute of limitations; and (4) appropriation claims are subject to a six-year statute of limitations. Smith v. Datla, 451 N.J. Super. 82, 93-94, 100 (App. Div. 2017).

Here, count four of plaintiff's complaint alleges defendants "cast[] . . . plaintiff in a false light." Plaintiff alleges, at an unspecified time near when he was terminated, McCallum called him a "thug," referring to plaintiff's past criminal history. Because plaintiff was terminated on January 12, 2018, and filed his complaint on January 10, 2020, his false light claim—regardless of its merits—is time-barred as the one-year statute of limitations has lapsed. See Smith, 451 N.J. Super. at 94.

Even if we were to accept plaintiff's argument that this is not actually a false light claim as pleaded, but rather a public disclosure of a private fact claim, with a two-year statute of limitations, his claim would still fail, because any prior conviction "is certainly not private as all criminal arrests and convictions

16

are matters of public record." G.D. v. Kenny, 411 N.J. Super. 176, 196 (App. Div. 2009), aff'd, 205 N.J. 275 (2011); see also Romaine v. Kallinger, 109 N.J. 282, 297 (1988) ("The invasion of privacy by unreasonable publication of private facts occurs when it is shown that 'the matters revealed were actually private . . . .'" (quoting Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 340 (App. Div. 1982))). Count four of the complaint was properly dismissed.

Affirmed in part, reversed in part, and remanded in accordance with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division

A-2366-23